William F. GRUN, Plaintiff–Appellant,

v.

PNEUMO ABEX CORP., PA Holdings Corp., and The Henley Group, Inc., Defendants–Appellees.

No. 97–1410.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 26, 1997.

Decided Nov. 24, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied Jan. 5, 1999.

414

Paul K. Vickrey, Niro, Scavone, Haller & Niro, Chicago, IL, John C. Sciaccotta, Jill A. Dougherty (argued), Richard H. Ferri, Kelly,

Olson, Rogan & Siepker, Chicago, IL, Robert E. Campbell, Cadwalader, Wickersham & Taft, Los Angeles, CA, for Plaintiff–Appellant.

Gary S. Kaplan, O. Michael Osanloo, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, William R. Sullivan, Jr. (argued), Franczek Sullivan, Chicago, IL, Hope A. Jacobson, Los Angeles, CA, for Defendants–Appellees.

Before CUMMINGS, COFFEY and EVANS, Circuit Judges.

COFFEY, Circuit Judge.

William F. Grun ("Grun") brought suit against Pneumo Abex in April 1990, alleging Pneumo Abex breached both a Severance Compensation Agreement ("SCA") and a separate "Management Incentive Compensation Plan" ("MICP"). Grun also brought suit against PA Holdings Corp. and The Henley Group, Inc., alleging intentional interference with contractual relations.[1] After extensive discovery, the trial court denied Grun's motion for summary judgment on his claim that Pneumo Abex breached the SCA, denied Pneumo Abex's motion for summary judgment on Grun's claim that Pneumo Abex breached the MICP, and granted defendants' motion for summary judgment on Grun's intentional interference claim. Thereafter, the court scheduled the case for a September 14, 1993 trial on Grun's two breach of contract claims.

Neither party appeared on the trial date, and the court dismissed Grun's case because of his failure to appear. The court sent notices of dismissal, but Grun states that he did not receive the notice. Grun filed a motion to advance his case for trial three years later, still unaware of the dismissal order. The district court denied the motion and suggested that Grun file a motion for relief from the dismissal order under Federal Rule of Civil Procedure 60(b). Grun did so and the court denied the motion, holding that the dismissal was not void under Rule

60(b)(4). In the alternative, the court dismissed the case for want of prosecution. The court entered final judgment against Grun on December 17, 1996, and docketed it three days later, on December 20, 1996. On January 14, 1997, Grun filed a notice of appeal challenging (1) the district court's decision denying Grun's motion for summary judgment on his claim that Pneumo Abex breached the SCA, (2) the district judge's denial of his Rule 60 motion for relief from judgment, and (3) the trial court's alternative dismissal for want of prosecution. We reverse and remand with instructions that the district court enter summary judgment for Grun on his claim for breach of the SCA and determine the amount of compensation to which Grun is entitled, and for a trial on Grun's claim for breach of the MICP.

## I. BACKGROUND

### A. *Pneumo Abex's Alleged Breach of the SCA.*

In October of 1987, Grun was President and General Manager of NWL Control Systems,[2] a division of Pneumo Abex located in Kalamazoo, Michigan. At that time, Grun's personal business office was also located in Kalamazoo. On October 21, 1987, during the course of his employment, Grun entered into a SCA with Pneumo Abex ("the Company") due to the likelihood that the Company would be sold in the near future.[3] The SCA contained two stated purposes: to "reinforce and encourage [Grun's] continued disinterested attention and undistracted dedication to his duties in the potentially disturbing circumstances of a possible change in control of the Company by providing some degree of personal financial security;" and to "induce [Grun] to remain in the employ of the Company." To achieve these purposes, the SCA provided that Grun would be entitled to a designated amount of severance compensation if two events occurred: (1) there was a "change in control" of the Company while Grun was still an employee (SCA, § 2(a));

---

1. PA Holdings and The Henley Group purchased Pneumo Abex in August of 1988.

2. NWL Control Systems is a manufacturer of flight control systems.

3. It is apparent from the record that Pneumo Abex drafted the SCA and simply asked Grun to sign and return it.

and (2) Grun chose to terminate his own employment for any one of ten "good reasons," including "a relocation of the Company's principal executive offices or [Grun's] relocation to any place other than the location at which [he] performed [his] duties prior to a change in control of the Company." The SCA further provided that "[n]o provisions of this Agreement may be modified, waived or discharged unless such waiver, modification or discharge is agreed to in writing signed by [Grun] and the Company."

On March 25, 1988, approximately five months after Grun's SCA was signed by the parties, Norman J. Ryker, president and chief executive officer of Pneumo . Abex, wrote a letter to Grun, apparently in an effort to explain the purpose of the SCA. Mr. Ryker stated that the SCA was to provide Grun with certain protections if a change in control occurred and Grun's position or compensation were substantially adversely affected. Mr. Ryker admitted that a change in the location of Grun's personal office was a potential adverse effect, but went on to explain that:

> [f]or holders of [SCAs] who do not work at the Company's [Boston] headquarters, a relocation of [the Company's] principal executive offices [in Boston] is not an adverse event. Inasmuch as you do not work at the Company's headquarters, this letter is to advise you that the Company did not intend for you to become entitled to termination compensation under Section 3(e)(vi) of the Agreement by virtue of the relocation of the Company's principal executive offices *unless* there is also a relocation of *your present* office. (Emphasis in original).

On April 5, 1988, Grun responded to Ryker's letter writing that:

> I cannot agree with [your] interpretation of the [SCA] which is contained in your letter of 3/25/88. My family and I consider a change in the location of the principal executive offices from the Boston area, which we consider to be our home, as one of the potential adverse effects of a change in control of the Company.

That same month, a prospective buyer signed a letter of intent to purchase Pneumo Abex, and the anticipated sale of Pneumo Abex was completed on August 29, 1988. Both parties agree this constituted a "change in control" under § 2(a) of the SCA.

In April of 1989, the Company announced that various corporate functions, formerly handled at Pneumo Abex's corporate headquarters in Boston, would be divided among several other offices: the consolidation, tax, and treasury functions moved to New Hampshire; the legal and security functions moved to Newton, Massachusetts; the human resources and benefits functions were absorbed into various operating divisions; and a corporate office was established in Chicago. In addition, the Company closed its principal executive offices in Boston.

On August 31, 1989, Grun tendered his resignation seeking severance compensation under the terms of the SCA. He alleged (1) that the Company had undergone a "change in control;" and (2) that the move of the executive offices out of Boston constituted a "good reason," thereby allowing him to terminate his employment and entitling him to compensation. Specifically, Grun pointed to § 3(e)(vi) of the SCA which listed, as one good reason, "a relocation of the Company's principal executive offices or [Grun's] relocation to any place other than the location at which [he] performed [his] duties prior to a change in control of the Company." (SCA, § 3(e)(vi)). The Company reviewed Grun's request. It decided Pneumo Abex had undergone a "change in control," but that Grun did not have "good reason" to resign because his Kalamazoo office had not been relocated. Accordingly, the Company denied Grun's claim to severance compensation. As a result, Grun decided to withdraw his resignation until the dispute surrounding the SCA was resolved. On October 15, 1989, however, Pneumo Abex terminated Grun's employment.

Grun filed the instant action on April 4, 1990, in the United States District Court for the Northern District of Illinois, Eastern Division. He alleged, among other things, that Pneumo Abex breached the SCA when it failed to pay him severance compensation as required by the SCA. Extensive discovery followed, and the parties filed cross motions

for summary judgment. The district court referred the motions to magistrate judge Lefkow pursuant to 28 U.S.C. § 636(b)(1).

On October 1, 1992, the magistrate judge submitted her Report and Recommendation to the trial court and recommended, in part, that Grun's motion for summary judgment be granted on his claim for breach of the SCA because all of the events necessary to trigger Grun's rights to severance compensation under the SCA had occurred. Specifically, the magistrate found that the SCA is an employee benefits plan governed by ERISA. Next, the magistrate noted that:

> the parties agree that a change in control, as contemplated by the SCA, occurred in August, 1989. Additionally, there is no dispute that Pneumo Abex's offices in Boston, Massachusetts were relocated in the fall of 1989. The parties' disagreement, then, is limited to whether ¶ 3(e)(vi) of the SCA was intended to trigger entitlement to severence (sic) compensation absent any relocation of the office where Grun worked.

The court held:

> it is apparent that the intention of the parties, *at the time the contract was made,* was to allow Grun to recover under the SCA if he terminated his employment within two years following a change in control and either Pneumo Abex's principal executive offices were relocated out of Boston, Massachusetts *or* his own place of work was relocated. The plain language of ¶ 3(e)(vi), when all of its words are taken in their ordinary sense, evidences this intention. (Emphasis in original).

As such, continued the magistrate judge, "all the events necessary to establish Grun's right to recover … have come to pass." The magistrate judge recommended that Grun be granted summary judgment on his claim for breach of the SCA.

In an order docketed on November 19, 1992, the district judge rejected the magistrate's recommendation pertaining to Grun's claim for breach of the SCA and denied Grun's motion for summary judgment. *See Grun v. Pneumo Abex Corp.,* 808 F.Supp. 632 (N.D.Ill.1992). The trial court agreed with the magistrate that the "terms and meaning" of § 3(e)(vi) are "actually straightforward and unequivocal," and that "[t]he plain meaning of this provision is that Grun would be entitled to the SCA benefits if Pneumo Abex's principal executive offices were relocated." The court also opined that "the plain language of § 3(e)(vi) is clear and unambiguous, and as such, the interpretation of this paragraph is a matter of law." Then, relying on our decision in *White v. Roughton,* 689 F.2d 118 (7th Cir.1982), the district judge noted that "even unambiguous language can be disregarded when the parties meant something other than that which was committed to paper." He concluded by holding that "[the fact] that Grun is entitled to SCA benefits because of Pneumo Abex's relocation from Boston is a *non sequitur,* indicative of a mutual mistake in the contract terms, which raises genuine issues of material facts (sic) concerning the SCA's execution." For this reason, the district court denied Grun's motion for summary judgment. Grun moved for reconsideration of the order or, alternatively, for certification of the order for an interlocutory appeal. The trial court denied both motions.

### B. *The District Court's Dismissal for Want of Prosecution.*

Months later, following the close of discovery, the parties submitted their pretrial materials. On March 31, 1993, the magistrate judge entered an order approving the pretrial submissions, and returned the case to the trial court. On April 1, 1993, the trial court entered an order setting the trial for "September 14, 1992," rather than 1993. The order was signed by the district court judge and stated that each side was notified by telephone of the trial date. It is undisputed that neither side received notice of the trial date, either by telephone or otherwise, and consequently no one appeared for trial on September 14, 1993. The district court issued and entered a written order the next day, September 15, 1993, noting that the case had been called for trial, that no one had appeared, and that the court was dismissing

the case due to Grun's failure to appear.[4] The record demonstrates that the dismissal order was never signed by the district court judge, and also notes that two dismissal notices were mailed to the parties. Counsel for the defendant received this dismissal notice but Grun's lawyers claim they did not receive the notice at any time.

Still under the impression that he was awaiting a trial date, Grun filed a change of address form in May of 1994 and sent copies to defendants' counsel, but apparently not to the court. Defendants' counsel received the change of address form, but elected not to contact Grun to advise him that his case had been dismissed. Grun's Chicago counsel,[5] Ms. Dougherty, states in an affidavit that she has not received a single notice from the court since the March 1993 notice from the magistrate judge which explained that the case was being returned to the district court for the setting of a trial date. She states further that she had clerks from her office "periodically" check the court file, that on one occasion she personally checked the court file, and that neither she nor any of the clerks ever found an order setting the case for trial, much less dismissing the case. In addition, counsel states that she expressly recalls telephoning the district judge's law clerk in May of 1994, and was told that the case had not "come through yet" for trial but that she would be notified when the trial date was set.

In August of 1996, Grun's counsel filed a motion to advance the case for trial. At the hearing on the motion, she was advised for the first time, by defendants' counsel, that the case had been dismissed in 1993. The district court denied the motion to advance (because there was no case to advance) and suggested that Grun file a motion to vacate the dismissal order pursuant to Federal Rule of Civil Procedure 60. Grun did so, relying on Rule 60(a) and Rule 60(b)(6). In his reply to Pneumo Abex's response, Grun also ar-

gued that the dismissal order was void under Rule 60(b)(4). After the motion was briefed, the trial court issued and entered a minute order requiring Grun's counsel to produce a copy of the court's call as listed in the *Chicago Daily Law Bulletin* for the day of trial, September 14, 1993. Grun's counsel filed a copy of the court's call; Grun's case did not appear in the *Bulletin*.[6] On December 20, 1996, the district court denied Grun's motion to reinstate the case under all three provisions of Rule 60. *See Grun v. Pneumo Abex Corp.*, 170 F.R.D. 441, 444–47 (N.D.Ill.1996). Alternatively, it declared the dismissal order void *ab initio* and, recognizing this meant the case was still "technically pending," dismissed the case for want of prosecution pursuant to Fed.R.Civ.P. 41(b) and Local Rule 21(A), because Grun had "waited three years to bring any error to the court's attention . . . and Pneumo Abex no longer has the ability to defend itself. . . ." *Id.* at 447. The court docketed a final judgment terminating Grun's case on December 20, 1997.

## II. ISSUES

Grun raises three issues for our consideration:

(1) Whether the district court correctly denied Grun's motion for summary judgment on his claim against Pneumo Abex for breach of the SCA;

(2) Whether the district court correctly denied Grun's motion for relief from judgment under Rule 60(b)(4);

(3) Whether the trial court abused its discretion when it dismissed Grun's case for want of prosecution.

## III. DISCUSSION

A. *Whether the District Court Properly Denied Grun's Motion for Summary Judgment for Breach of the SCA.*

Initially, Pneumo Abex argues that we lack jurisdiction to review the district

---

4. The docket entry reads: "Case called for trial pursuant to court order dated 04/01/93. Counsel failed to appear. Case dismissed for plaintiff's failure to appear. terminating (sic) case. Mailed notice. (sb)[Entry date 09/15/93]."

5. Grun had counsel in Los Angeles and Chicago.

6. After the Rule 60 motion hearing, Grun's counsel again reviewed the court file. She claims it contained numerous misfiled documents, and that certain papers pertaining to Grun's case bore incorrect case numbers.

court's denial of summary judgment because, generally speaking, denials of summary judgment are interlocutory decisions and thus are not appealable. This court has jurisdiction to hear appeals from the "final decisions" of the federal district courts. 28 U.S.C. § 1291. An order becomes final or appealable upon the entry of a final judgment. *See Herdrich v. Pegram*, 154 F.3d 362, 367 (7th Cir.1998). The proper appeal of a final judgment renews all issues previously pleaded and resolved by the trial court in litigation. *See In re Grabill Corp.*, 983 F.2d 773, 775 (7th Cir. 1993). We can find no binding authority, and apparently neither could Pneumo Abex, holding that we lack jurisdiction to review the district court's denial of summary judgment simply because the trial judge's subsequent entry of a final judgment resulted from the court's dismissal for want of prosecution. Having settled the jurisdictional question, we address the merits, beginning with defining the appropriate standard of review.

■ We review *de novo* the district court's denial of Grun's motion for summary judgment. *See Porter v. Whitehall Laboratories, Inc.*, 9 F.3d 607, 612 (7th Cir.1993). That is, we review "without deference for the view of the district judge and hence almost as if the motion had been made to us directly." *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 332 (7th Cir.1993). Summary judgment should be granted if the movant demonstrates through its pleadings and other record materials filed with the court—pleadings, depositions, answers to interrogatories, admissions on file, and affidavits—that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has met its burden, the nonmovant must set forth specific facts showing a genuine issue for trial, and may not rely upon mere allegations or denials of the pleadings. *See* Fed.R.Civ.P. 56(e); *Gonzalez v. Ingersoll Milling Mach.*

7. We note that an appellate court reviewing denial of benefits under ERISA reviews under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *See Firestone Tire &*

*Co.*, 133 F.3d 1025, 1031 (7th Cir.1998). In determining whether a genuine issue of material fact exists, we consider the evidence in the light most favorable to the nonmovant. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

■ Grun and Pneumo Abex entered into and signed the SCA in October of 1987. Under the SCA's terms, Grun was entitled to severance compensation upon the occurrence of "a relocation of the Company's principal executive offices or [Grun's] relocation to any place other than the location at which [he] performed [his] duties prior to a change in control of the Company." SCA, § 3(e)(vi). Grun argues that he is entitled to compensation under the section if the Company relocates either his own personal office (in Kalamazoo) *or* the Company's Boston executive offices. Pneumo Abex, on the other hand, contends that Grun's right to payment is triggered only if the Company relocated Grun's own personal office. Thus, we have before us a case of contract interpretation. We are mindful that contract interpretation is a subject particularly suited to disposition by summary judgment. *See Metalex Corp. v. Uniden Corp. of America*, 863 F.2d 1331, 1333 (7th Cir.1988).

■ Initially, the parties agree that the SCA is an employee welfare benefit plan governed by ERISA.[7] *See* 29 U.S.C. § 1001, *et seq.* ERISA requires that "[e]very employee benefit plan ... be established and maintained pursuant to a written instrument." *Id.* at § 1102(a)(1). Here, the written instrument is the SCA, and we construe it in accordance with the federal common law under ERISA and general rules of contract interpretation. *See Hammond v. Fidelity and Guaranty Life Ins. Co.*, 965 F.2d 428, 429 (7th Cir.1992); *see also, e.g., Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1388–89 (7th Cir.1993).

*Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Pneumo Abex does not contend that it had such authority, and does not suggest our review should be anything but *de novo*.

**420**

When interpreting written contracts, we initially determine, as a matter of law, whether the contract is ambiguous or unambiguous. *See Ryan v. Chromalloy American Corp.*, 877 F.2d 598, 602 (7th Cir. 1989). Ambiguity exists if a provision is subject to reasonable alternative interpretations. *See Hickey*, 995 F.2d at 1389 (citing *Taylor v. Continental Group*, 933 F.2d 1227, 1232 (3rd Cir.1991)). We agree with both the magistrate judge and the district court which held the subject provision to be unambiguous, straightforward and unequivocal. Courts must interpret the express terms of a plan "in an ordinary and popular sense as would a person of average intelligence and experience...." *Pitcher v. Principal Mut. Life Ins. Co.*, 93 F.3d 407, 411 (7th Cir.1996) (citing *Meredith v. Allsteel, Inc.*, 11 F.3d 1354, 1358 (7th Cir.1993)). We can imagine no ordinary or reasonable interpretation of the relevant provision other than the one Grun suggests; neither could the magistrate judge or the district judge. The language Pneumo Abex chose to use when it drafted the SCA plainly and unambiguously entitles Grun to resign and receive compensation if either his personal office was moved from Kalamazoo *or the Company's executive offices were moved from Boston.*

Despite its findings that § 3(e)(vi) is unambiguous, and that there is "no dispute that Pneumo Abex's executive offices in Boston closed in ... 1989," the district court denied Grun's motion for summary judgment. The court relied on *White v. Roughton*, 689 F.2d 118 (7th Cir.1982), for the proposition that "a court can properly disregard even unambiguous language when it is convinced that the parties meant something different from what they said." *Id.* at 120. The trial judge then declared that § 3(e)(vi) was a *"non sequitur*, indicative of a mutual mistake in the contract terms, which raises material issues of genuine facts (sic) concerning the SCA's execution." Finally, the judge noted that "to decipher the actual expectations of the parties, the court must look to the negotiation, bargaining, and past conduct of the parties[,]" and on these grounds, found that summary judgment was inappropriate.

We disagree. Initially, we note that as a general rule, an unambiguous contract should be construed without reference to extrinsic evidence:

[i]f a district court determines that the pertinent provisions of the contract are unambiguous, it need not consider extrinsic evidence. At that point, the district court should proceed to declare the meaning of those provisions.

*Ryan v. Chromalloy American Corp.*, 877 F.2d 598, 602 (7th Cir.1989); *see also Bellino v. Schlumberger Technologies, Inc.*, 944 F.2d 26, 32 (1st Cir.1991) ("Basic contract ... principles preclude federal courts from considering extrinsic evidence where the ERISA terms in question are unambiguous."); *U.S. Fire Ins. Co. v. Pressed Steel Tank Co.*, 852 F.2d 313, 316 (7th Cir.1988) ("If the contract is unambiguous, the court is to construe it as a matter of law."). Thus, if the language of the contract provides an answer, then the inquiry is over; parol evidence is neither necessary nor admissible. *See Wikoff v. Vanderveld*, 897 F.2d 232, 238 (7th Cir.1990). The rule against admitting unnecessary extrinsic evidence supports the law's "general policy of upholding the integrity of written contracts and favoring written terms over extrinsic evidence...." *See Air Line Stewards and Stewardesses Assoc., Local 550, TWU, AFL–CIO v. Trans World Airlines, et al.*, 713 F.2d 319, 322 n. 2 (7th Cir.1983) (citation omitted). Thus, when a contract is unambiguous, "[w]e refuse to indulge in judicial activism" by "constru[ing] the [contract] beyond its clear and obvious language...." *See Heller v. Equitable Life Assurance Soc'y*, 833 F.2d 1253, 1257 (7th Cir.1987).

Despite this accepted rule, this Circuit has held that when the district court finds that a "mutual mistake" has occurred in the formation of the contract, it can "disregard" unambiguous words. *See White*, 689 F.2d at 120. But this is not done lightly; where language is unambiguous, we ignore it only in "the rare case where literal application of a text would lead to absurd results or thwart the obvious intentions of its drafters." *Marlowe v. Bottarelli*, 938 F.2d 807, 812 (7th Cir.1991) (citations omitted). We disagree with the trial judge's reliance on *White* to

find that a mutual mistake existed which led to the formation of the SCA, and in particular, the inclusion of the Boston executive offices provision.

A mutual mistake results when *"both parties* share a common assumption about a vital existing fact upon which they based their bargain and that assumption is false ... [and] because of the mistake, a quite different exchange of values occurs from the exchange of values the parties contemplated...." *McLaughlin v. Jung,* 859 F.2d 1310, 1313 (7th Cir.1988) (emphasis added) (citing J. Calamari & J. Perillo, *Contracts* § 9–26 (3d Ed.1987)); *see also, Ramsey v. Colonial Life Ins. Co. of America,* 12 F.3d 472, 479–80 (5th Cir.1994) (in interpreting an ERISA–governed insurance policy, court noted that where both parties are mistaken as to material aspect of contract, court can reform contract). However, "a self-serving statement ... that a party did not understand the contract to mean what it says (or appears to say) will not suffice." *AM Int'l, Inc. v. Graphic Mgmt. Assoc., Inc.,* 44 F.3d 572, 575 (7th Cir.1995) (quoting *FDIC v. W.R. Grace & Co.,* 877 F.2d 614, 622 (7th Cir.1989)). In this case, Pneumo Abex argues that it did not mean what it wrote. Grun, on the other hand, has consistently maintained there was no mutual mistake, and that he received exactly the "exchange of values" he contemplated when he signed the SCA. The record demonstrates that Grun believes, and the record reveals he has always believed, that closure of the Boston office prompted his rights to compensation under the SCA. As such, Pneumo Abex has failed to establish that *both* parties agreed to a mistaken material term in the SCA; the mistake is not mutual.

Grun initially joined the Company at its Boston location, and though he had worked for the Company at other locations, he had previously returned to work at the Boston office on one prior occasion. Indeed, the correspondence exchanged between Ryker and Grun, written long before the outset of this litigation, demonstrates that Grun meant exactly what was written in the SCA. Specifically, Ryker's March 25, 1998 letter to Grun explained, in part, Pneumo Abex's interpretation of the SCA. In response, ten days later Grun wrote that "[m]y family and I consider a change in the location of the principal executive offices from the Boston area, which we consider to be our home, as one of the potential adverse effects of a change in control of the Company." Moreover, Grun submitted deposition testimony, not disputed by Pneumo Abex, that he contacted the general counsel of Pneumo Abex, Christoph Hoffman, before he signed the SCA to confirm that the Boston office clause applied to him. According to Grun, Hoffman stated "I thought you would have had an interest in coming back to Boston. It's there in your agreement. It's a good agreement." Grun's intentions, even before this litigation ensued, were precisely in line with what the Boston clause provided. In these circumstances, there was no *"mutual* mistake."

In addition, the SCA contained a "no oral modifications" clause which explicitly stated that "[n]o provision of this Agreement may be modified, waived or discharged unless such waiver, modification or discharge is agreed to in writing by [Grun] and the Company." Mr. Ryker's letter may have attempted to modify the terms of the SCA, but Grun explicitly rejected Ryker's interpretation, and certainly did not sign off on any changes.

The record contains ample evidence reaffirming the unequivocal express terms of the SCA. Though Pneumo Abex may not have intended to draft the SCA as it did, the unambiguous terms of the SCA do not conflict with the intentions of Pneumo Abex *and* Grun, and the *White* "mutual mistake" rationale for ignoring plain meaning is absent. Pneumo Abex persuaded the trial court to *simply ignore* the plain language of the SCA, *language which it drafted,* and conclude that the propriety of its denial of severance compensation to Grun is a jury question. In assenting to Grun's plea to ignore the unambiguous terms, the district court engaged in the very judicial activism that we warned against in *Heller,* 833 F.2d at 1255. The courts are not "free to cast aside the agreed upon terms" of a contract, *see Bechtold v. Physicians Health Plan of Northern Indiana, Inc.,* 19 F.3d 322, 328 (7th

Cir.1994), and we cannot permit Pneumo Abex to unilaterally extinguish Grun's entitlement to compensation. As such, we reverse the district court's denial of Grun's motion for summary judgment on his claim for breach of the SCA. We direct the court to enter summary judgment for Grun on that claim, and to determine the appropriate amount of compensation to which Grun is entitled under the SCA.

### B. Whether the District Court Abused Its Discretion When it Denied Grun's Rule 60 Motion for Relief from Judgment?[8]

■ Before addressing the merits of Grun's Rule 60 motion, it is necessary to briefly recap the relevant procedural history of this case. In April of 1993, the district court set this case for trial to begin in September of 1993. It is undisputed that neither party received notice of the trial date. When neither party appeared for trial, the district court dismissed Grun's case, and in a September 15, 1993 minute order, stated: "Case called for trial pursuant to court order.... Counsel failed to appear. Case dismissed for plaintiff's failure to appear." The next day, the court sent notices of the dismissal to the parties, and though defense counsel acknowledges that he received such notice, plaintiff's counsel alleges in an affidavit filed with the district court that she did not receive the

notice. Eight months later, Grun sent a change of address form to defense counsel, who chose not to inform Grun that the case had been dismissed.[9] Moreover, Grun's counsel alleges that she sent employees of her firm to review the court file to check for a trial date, and that in May, 1994, counsel spoke directly to the court clerk and inquired about the trial date. The court clerk informed counsel that a trial date had not yet been set, but that counsel would be notified as soon as a date was set.

On August 15, 1996, Grun, still under the impression that he was awaiting a trial date, moved the court to advance the case for trial. The court denied the motion, (because technically there was no case to advance), and suggested Grun move for Rule 60 relief from the September 14, 1993 dismissal order. Grun did so, and on December 20, 1996, the court denied Grun's Rule 60 motion.

In its Order and Opinion denying Grun Rule 60 relief, the trial court first found that its September 14, 1993 dismissal order, entered one day after the parties failed to appear for trial, was proper. The court continued:

> [a]lternatively, the court finds that the dismissal order was void *ab initio* ... Grun has long had constructive notice of the

---

8. A Rule 60 motion may be brought only following the entry of a final judgment. *See* Fed. R.Civ.P. 60. A final judgment must "set forth the relief to which the prevailing party is entitled or the fact that the plaintiff has been denied all relief." *Reytblatt v. Denton*, 812 F.2d 1042, 1044 (7th Cir.1987). Rule 58 requires the entry of a separate document, which informs "the parties (and the appellate court) exactly what has been decided and when." *Id.* at 1043. The district court did not enter a separate judgment on Form AO 450 following the dismissal of the case. It did, however, enter the above-referenced minute order. A minute order can satisfy the separate document requirement of Rule 58 in some instances. *See Paganis v. Blonstein*, 3 F.3d 1067, 1070 n. 1 (7th Cir.1993) (citation omitted). Here, it was clear from the language chosen by the district court that the minute order constituted "dismissal of the entire action end[ing] the litigation and forc[ing] the plaintiff to choose between appealing the judgment or moving to reopen the judgment ... pursuant to Fed. R.Civ.P. 60." *Benjamin v. United States*, 833 F.2d 669, 671 (7th Cir.1987) (citations omitted).

9. We do not condone Pneumo Abex's counsel's decision to remain silent when he admittedly knew that Grun was unaware of the dismissal order, *and* that neither party had received notice of the trial date. Counsel admits he researched whether he had an obligation to inform Grun of the dismissal notice and, finding no explicit obligation in the rules, he chose to remain silent. We note that the Rules of Professional Conduct for the Northern District of Illinois prohibit attorneys from engaging in conduct that is prejudicial to the administration of justice. *See* Rule 8.4. And, the Standards for Professional Conduct Within the Seventh Federal Judicial Circuit prohibit an attorney from causing a case to be dismissed without first notifying counsel. *See* Duty 18. Pneumo Abex's counsel did not affirmatively "cause" the case to be dismissed, but counsel was well aware that things were amiss and chose not to fix them even though doing so would have promoted the interest of fair play. Regardless of whether an explicit rule required Pneumo Abex's counsel to alert Grun's attorney of the dismissal, the spirit of the rules required such a result.

long-passed trial date and the court's clerical error ... [and Grun] demonstrated an intent to abandon his case.... Consequently, in the alternative, the court dismisses the case for want of prosecution pursuant to Local Rule 21(A).

Thus, we must examine whether Grun was entitled to Rule 60 relief from the trial court's dismissal order; second, if we find Grun is entitled to Rule 60 relief, we must examine the district court's alternative finding dismissing Grun's case for want of prosecution.

Initially, we examine Grun's Rule 60(b) claim.[10] Grun requests relief under Rule 60(b)(4), which authorizes relief when "the judgment is void." Fed.R.Civ.P. 60(b)(4). We review denial of a Rule 60(b)(4) motion *de novo*. A judgment may be deemed void if the court that rendered the judgment acted in a manner inconsistent with due process of law. *See United States v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply*, 55 F.3d 1311, 1316 (7th Cir.1995) (citations omitted). Generally, due process requires that all litigants be given notice and an opportunity to be heard. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). "The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending hearing." *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 14, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978). "An elementary and fundamental requirement of due process in any proceeding which is to be afforded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 13, 98 S.Ct. 1554 (quoting *Mullane*, 339 U.S. at 314, 70 S.Ct. 652).

Grun argues that the September 14, 1993 order dismissing his case for failure to appear at trial violated due process because he did not receive notice of the trial date.

Indeed, it is clear from the record that the district court inadvertently failed to notify either of the parties, either by telephone, mail or otherwise, that they had a trial date. Not surprisingly, it is also undisputed that neither party appeared for trial. It is also clear that Grun's failure to appear at the trial formed the *sole basis* for the district court's September 14, 1993 dismissal of Grun's case. In its Order and Opinion denying Rule 60 relief, the district judge held that its dismissal order was not void because:

[t]he court's order setting the trial date was in the court's file and computer docket between April 7, 1993, and September 14, 1993—the date of dismissal. Thus, Grun should have known of the impending trial date. Apparently, neither Grun nor his counsel bothered to examine the file during that five-month period.

To justify its decision, the court relied on "a critical line of cases" beginning with *Link v. Wabash R. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). But *Link* and the cases the district court considers its progeny are totally distinguishable. In *Link*, for instance, the district judge dismissed plaintiff's case *sua sponte* for failure to appear at a pretrial conference, and did so without giving notice that the case would be dismissed. *See id.* at 629, 82 S.Ct. 1386. The court stated that "the absence of notice as to the possibility of dismissal or the failure to hold an adversary hearing does not necessarily render such a dismissal void." *Id.* at 632, 82 S.Ct. 1386. But the facts demanding dismissal in *Link* are discernibly different from those in *Grun*. In *Link*, the trial court had explicitly notified Mr. Link's counsel of the

**10.** Fed.R.Civ.P. 60(b) provides, in relevant part: On motion and upon such terms as are just, the court may relieve a party ... or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence would not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

pretrial conference and counsel simply failed to attend. This mistake followed other instances where Link had been less than vigorous in prosecuting his case. The Supreme Court reasoned that district courts, "acting on their own initiative, [are permitted] to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." *Id.* at 630, 82 S.Ct. 1386.

Thus, the Supreme Court's holding in *Link* does not stand for the proposition that a district court maintains discretion to dismiss a case when a party fails to show up for a trial, conference or hearing *even though the trial court failed to give notice of the hearing.* Rather, *Link* holds that *once a court has good grounds for dismissal,* the court's failure to grant a hearing to discuss the dismissal is not *per se* void for lack of due process. The district court also cited to *Dickerson v. Board of Educ. of Ford Heights, Ill.,* 32 F.3d 1114 (7th Cir.1994) in support of its decision to dismiss the case. But *Dickerson* involved dismissal of a case because of a party's repeated failure to comply with court orders. Thus, *Dickerson* is similarly not on point.

The trial court's reliance on *Link* and its progeny, to justify both the dismissal and subsequent refusal to grant Rule 60 relief from judgment, is incorrect and unpersuasive. Grun's failure to appear at a trial of which he never had notice, due exclusively to courthouse errors, and his alleged failure to examine the court file during a five month period following his submission of pretrial materials, simply do not rise to a level that requires, or even allows, dismissal of his case.

Also compelling is that the record is barren of any suggestion whatsoever that Grun was dilatory prior to the September 14, 1993 dismissal. On the contrary, Grun had been vigorously prosecuting his case. The record demonstrates that Grun's counsel had appeared at all prior hearings,[11] had timely propounded and answered written discovery, had filed a summary judgment motion which

the magistrate judge had recommended be granted (in fact, the magistrate had recommended a sizeable award to Grun), and had completed the submission of required pretrial materials and was prepared for trial. From Grun's perspective, he was simply awaiting a trial date. It is certainly not that unusual for a litigant to hear nothing from the courthouse for a period of five months. Obviously, defense counsel felt the same; he did not check the court docket or contact the court clerk to get a trial date either, as evidenced by the fact that he did not show up for trial.

Grun's actions are not representative of the actions of a litigant deserving the harsh sanction of dismissal. The dismissal order is void under Rule 60(b)(4) because it denied Grun due process, and the district court should have granted Grun's Rule 60 motion for relief from judgment.

### C. *Whether the District Court Abused its Discretion by Alternatively Dismissing Grun's Case for Failure to Prosecute.*

Because we find Grun's Rule 60 motion should have been granted, we next turn to the court's alternative holding dismissing the case for want of prosecution. We review the trial court's dismissal for want of prosecution under an abuse of discretion standard. *See Dunphy v. McKee,* 134 F.3d 1297, 1300 (7th Cir.1998) (citations omitted).

In its December 20, 1996 order, the trial court states:

> [t]he order setting the case for trial ... has been in the court's file and computer since April 3, 1993. Grun has long had constructive notice of the long-passed trial date and the court's clerical error. However, Grun waited three years to bring any error to the court's attention for status or trial, disregarding his responsibility to move the case forward. He demonstrated an intent to abandon his action. Consequently, in the alternative, the court dismisses the case for want of prosecution pursuant to Local General Rule 21(A).

---

11. The docket reveals at least four status conferences, and there is no indication that plaintiff failed to appear for any one of these, though apparently counsel for defendant was absent on one occasion.

Undoubtedly, district courts possess the inherent authority to dismiss cases *sua sponte* for a failure to prosecute. *See GCIU Employer Retirement Fund v. Chicago Tribune Co.*, 8 F.3d 1195, 1199 (7th Cir.1993) (citation omitted). However, dismissal for failure to prosecute is "a harsh sanction which should usually be employed only in extreme situations, when there is a *clear record of delay* or contumacious conduct, or when other less drastic sanctions have proven unavailable." *Pyramid Energy Ltd. v. Heyl & Patterson, Inc.*, 869 F.2d 1058, 1061 (7th Cir.1989) (emphasis in original) (citations omitted). Moreover, we have held that "there *must be an explicit warning* before the case is dismissed [for failure to prosecute]." *Ball v. City of Chicago*, 2 F.3d 752, 760 (7th Cir.1993) (emphasis added). And, "dismissals without warning are appropriate in only the most extreme cases, where it is clear that counsel must have *expected* his actions (or inaction) to be answered with dismissal." *In re Bluestein & Co.*, 68 F.3d 1022, 1026 (7th Cir.1995) (emphasis in original).

Grun references and distinguishes several cases in which a plaintiff's suit was dismissed for failure to prosecute because of a pattern of dilatory or contumacious behavior. Grun argues that, unlike those plaintiffs, he has not engaged in such dilatory or contumacious tactics and thus, dismissal for failure to prosecute is unwarranted. Grun asserts that he and his counsel did not prosecute his case because he was awaiting a trial date, and not having received notice thereof, he assumed that the court had not yet scheduled the case for trial. *See Ace Novelty Co. v. Gooding Amusement Co.*, 664 F.2d 761, 763 (9th Cir. 1981) (when case is ready for trial, plaintiff is not obligated under the local rules to take further affirmative action).

While it is true that counsel is expected to monitor the disposition of his client's case, *see DeRango v. United States*, 864 F.2d 520, 523 (7th Cir.1988), the record reflects Grun's attorney's efforts in this regard. Grun filed a change of address form and sent copies to defense counsel on May 5,

1994. In addition, one of Grun's Chicago attorneys caused employees from her office to periodically check the district court file for trial dates. More importantly, counsel personally reviewed the file and could not locate any order setting the case for trial or dismissing the case. Grun's counsel explicitly recalls telephoning the district court's clerk on or about May 19, 1994 to inquire about a trial date. The clerk informed her that the case had not "come through yet" for trial, and that counsel would be notified when the trial was set.

Each case that is dismissed for lack of prosecution must be reviewed in light of its particular facts and procedural history. *See GCIU Employer Retirement Fund*, 8 F.3d at 1199. The facts and procedural history of this case do not reveal grounds for dismissal for failure to prosecute. These facts fail to evidence a "clear record of delay or contumacious conduct." *See Pyramid Energy*, 869 F.2d at 1061. Moreover, the trial court dismissed the case prior to issuing "an explicit warning," *see Ball*, 2 F.3d at 760, and Grun could not have expected his inaction to be answered with dismissal. *See In re Bluestein*, 68 F.3d at 1026.

## IV. CONCLUSION

We reverse and remand and direct the district court to enter summary judgment in favor of Grun on his claim for breach of the SCA, and to determine the amount of compensation Grun is entitled to under the SCA. We also reverse the district court's denial of Grun's Rule 60 motion, and alternative dismissal of Grun's case for want of prosecution. As such, we remand this case to the district judge for trial on Grun's remaining claim against Pneumo Abex for breach of the Management Incentive Compensation Plan.[12]

The judgment of the district court is

REVERSED AND REMANDED.

12. We deny Grun's request that the case be assigned to a different trial judge pursuant to 7th Circuit Rule 36. We are confident application of the rule is not necessary to "avoid the operation of bias or mindset." *See Cange v. Stotler & Co.*, 913 F.2d 1204, 1208 (7th Cir.1990).