Michael **AMBUR** and Nola Ambur, Plaintiffs,

v.

**UNITED STATES of America,** Defendant.

No. Civ. 01–3015.

United States District Court, D. South Dakota, Central Division.

June 17, 2002.

Michael Mitchell Billion, Myers, Peters, Hoffman & Billion, Sioux Falls, South Dakota, for plaintiffs.

Bonnie P. Ulrich, Michelle G. Tapken, U.S. Attorney's Office, Sioux Falls, South Dakota, Donald N. Dowie, U.S. Department of Justice, Special Litigation/Tax Division, Washington, DC, for defendant.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

KORNMANN, District Judge.

### BACKGROUND

[¶ 1.] Plaintiffs instituted this action pursuant to 28 U.S.C. § 1346(a)(1), seeking to collect $16,062.00 in claimed overpaid fed-eral income taxes, self-employment taxes and interest assessed and collected in 2000 for the tax years 1994, 1995, and 1996. Plaintiffs have filed a motion for partial summary judgment, contending that the assessments for self-employment taxes are time barred and a refund is due from defendant. The United States filed a cross-motion for partial summary judgment[1], contesting plaintiffs' statute of limitations defense as to the self-employment taxes.

### DECISION

[¶ 2.] Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c) and *Donaho v. FMC Corporation,* 74 F.3d 894, 898 (8th Cir. 1996). The United States Supreme Court has held that:

> The plain language of Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact", since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "A material fact dispute is genuine if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Landon v. Northwest Airlines, Inc.,* 72 F.3d 620, 624 (8th Cir.

---

1. The motion is captioned as an alternative motion to dismiss. The defendant filed a statement of material facts in support of the motion and the motion will be considered a motion for partial summary judgment.

1995). As already noted, the parties have, in effect, filed cross-motions for partial summary judgment as to the collection of self-employment taxes. Where the parties file such cross-motions, the standards by which the Court decides the motions do not change. Each motion must be evaluated independently, "taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Heublein Inc. v. United States*, 996 F.2d 1455, 1461 (2nd Cir.1993). *See also Bakery and Confectionery Union and Industry International Health Benefits and Pension Funds v. New Bakery Co. of Ohio*, 133 F.3d 955, 958 (6th Cir. 1998).

[¶ 3.] Generally, any unpaid tax imposed by Title 26 must be assessed by the Internal Revenue Service ("IRS") within three years after the return has been filed. 26 U.S.C. § 6501(a). The three year limitations period may be extended by consent of the taxpayer and the Secretary of the Treasury. 26 U.S.C. § 6501(c)(4). That section provides, in part:

> Where, before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title ... both the Secretary and the taxpayer have consented in writing to its assessment after such time, the tax may be assessed at any time prior to the expiration of the period agreed upon.

[¶ 4.] On February 2, 1998, plaintiffs executed IRS Form 872 (Rev. June 1996) wherein they agreed, in part:

> The amount of any Federal *income* tax due on any return(s) made by or for the above taxpayer(s) for the period(s) ended December 31, 1994 may be assessed at any time on or before April 15, 1999. However, if a notice of deficiency in tax for any such period(s) is sent to the taxpayer(s) on or before that date, then the time for assessing the tax will be further extended by the number of days the assessment was previously prohibited, plus 60 days.

[¶ 5.] On November 25, 1998, the plaintiffs executed Internal Revenue Service Form 872–A (Rev. October 1987) wherein they agreed, in part:

> (1) The amount(s) of any Federal *Income* tax due on any return(s) made by or for the above taxpayer(s) for the period(s) ended December 31, 1994 & December 31, 1995 may be assessed on or before the 90th (ninetieth) day after ...

> (2) This agreement ends on the earlier of the above expiration date or the assessment date of an increase in the above tax or the overassessment (sic) date of a decrease in the above tax that reflects the final determination of tax and the final administrative appeals consideration ...

[¶ 6.] On December 20, 1999, the plaintiffs executed a largely identical IRS Form 872A for the period ending December 31, 1996.

[¶ 7.] As to each of the consent forms, no employee of the IRS signed until after plaintiffs had signed and submitted the forms to the IRS.

[¶ 8.] The instructions for who must sign a particular form are substantially similar and are part of the forms, not a separate publication. The instructions provide, in part:

> If this consent is for income tax, self-employment tax, or FICA tax on tips ...

> If this consent is for gift tax ...

> If this consent is for Chapter 41, 42, or 43 taxes ...

> If this consent is for Chapter 42 taxes ...

[¶ 9.] In June of 2000, the IRS assessed plaintiffs additional income tax and self-

employment tax for the 1994, 1995, and 1996 tax years. Plaintiffs filed amended returns (noting their disagreement with the assessments), paid the assessments and sought a refund. On March 19, 2001, the IRS rejected the request for a refund or credit, describing in the letter the "kind of tax" at issue as "income." Plaintiffs then filed the present action, seeking a refund of the additional income tax assessed and paid for those three tax years (Counts I, II and III) and of the additional self-employment tax assessed and paid for those three tax years (Counts IV, V, and VI).

■ [¶ 10.] Only the Counts concerning the self-employment taxes are at issue in the motions for partial summary judgment. All parties are seeking a determination whether the consents to extend the limitations period to assess federal income tax applied to also extend the time to assess federal self-employment taxes.

> The bar of the statute of limitations is an affirmative defense, and the party raising it must specifically plead it and carry the burden of proof. Rule 142(a); *Adler v. Commissioner*, 85 T.C. 535, 540, 1985 WL 15397 (1985). A party pleading the statute of limitations as a bar to assessment establishes a prima facie case by showing that the statutory notice was mailed beyond the normally applicable period provided by the statute of limitations. The burden of going forward then shifts to the other side to show that the bar of the statute of limitations is not applicable. *Adler v. Commissioner, supra* at 540, 1985 WL 15397. *See Concrete Engineering Co. v. Commissioner*, 58 F.2d 566 (8th Cir.1932), *affg.* 19 B.T.A. 212, 1930 WL 505 (1930); *Stern Bros. & Co. v. Burnet*, 51 F.2d 1042 (8th Cir.1931), *affg.* 17 B.T.A. 848, 1929 WL 271 (1929).

*Woods v. C.I.R.*, 92 T.C. 776, 779, 1989 WL 32907 (1989).

■ [¶ 11.] The respective statements of material facts submitted by the parties in support of or in resistance to the motions show that the assessments issued in June of 2000 for additional taxes were issued beyond three years from the date the 1994 and 1995 tax returns were filed. The defendant contends that the 1996 tax return was not filed until June 30, 1997, less than three years before the assessment for additional taxes for the 1996 tax year. However, the assessment clearly shows that the 1996 tax return was received on or before April 15, 1997. The assessment shows that the IRS did not process the return until June 30, 1997. The plaintiffs have met their burden of showing that the June 2000 assessments were issued in excess of three years after the 1994, 1995, and 1996 returns were filed. The burden shifts to the defendant to show that the bar of the statute of limitations is not applicable because the plaintiffs waived that bar. There is no dispute, of course, that waivers were timely executed and filed to "overcome" the statute of limitations. The dispute lies with what the waivers cover.

■ [¶ 12.] Plaintiffs contend that, applying principles of *contract construction*, the parties clearly only extended the time within which federal *income* taxes could be assessed and did not consent to extend the time within which federal *self-employment* taxes could be assessed. "A consent to extend the statute of limitations is essentially a unilateral waiver of the taxpayer's defense rather than a contract; contract principles are important, however, because section 6401(c)(4) requires an agreement between the parties." *Camara v. C.I.R.*, 91 T.C. 957, 959, 1988 WL 123886 (1988) (citing *Kovens v. Commissioner*, 90 T.C. 452, 457, 1988 WL 21858 (1988)). *See also*

*Grunwald v. Commissioner,* 86 T.C. 85, 88–90, 1986 WL 22077 (1986), and *Woods v. C.I.R.,* 92 T.C. 776, 780, 1989 WL 32907 (1989).

[¶ 13.] "When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals." *Mobil Oil Exploration and Producing Southeast, Inc. v. United States,* 530 U.S. 604, 607–08, 120 S.Ct. 2423, 2429, 147 L.Ed.2d 528 (2000) (quoting *United States v. Winstar Corp.,* 518 U.S. 839, 895, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996)). "[T]he contract we are interpreting is one in which the United States is a party, and one which is entered into pursuant to authority conferred by federal statute. The necessity of uniformity of decision demands that federal common law, rather than state law, control the contract's interpretation." *Miree v. De-Kalb County, Ga.,* 433 U.S. 25, 28, 97 S.Ct. 2490, 2493, 53 L.Ed.2d 557 (1977). *Accord United States v. Seckinger,* 397 U.S. 203, 209–10, 90 S.Ct. 880, 884, 25 L.Ed.2d 224 (1970). *See also Audio Odyssey, Ltd. v. United States,* 255 F.3d 512, 520 (8th Cir. 2001), *rehg. den.* (Oct 05, 2001), *rehg. den.* (Nov 01, 2001) (federal common law applies when a federal agency is a party and the outcome of the case will directly affect substantial financial obligations of the United States).

[¶ 14.] There is no precise source of federal common law. However, "[t]here is a general uniformity of the contract principles applied throughout the country in state and federal courts alike." *Southwestern Bell Telephone Co. v. Connect Communications Corp.,* 225 F.3d 942, 949 (8th Cir.2000) (Morris Sheppard Arnold, J, dissenting). In crafting the federal common law of contract interpretation, the court looks to the body of state law, searching for common rules. *Linear*

*Technology Corp. v. Micrel, Inc.,* 275 F.3d 1040, 1048 (Fed.Cir.2001). The principles of general contract law have become the federal common law of contract construction. *Fomby–Denson v. Dept. of Army,* 247 F.3d 1366, 1373–74 (Fed.Cir.2001). "When applying the 'federal common law' of contracts, 'that law must take into account the best in modern decision and discussion.'" *United States v. Basin Elec. Power Co-op.,* 248 F.3d 781, 796 (8th Cir. 2001) (quoting *Montana Power Co. v. United States,* 8 Cl.Ct. 730, 735 (Cl.Ct. 1985)). "We look to state as well as federal case law as a source for federal common law on applicable principles of construction." *A.W.G. Farms, Inc. v. Federal Crop Ins. Corp.,* 757 F.2d 720, 726 (8th Cir.1985).

[¶ 15.] This court can discern no difference between federal common law and South Dakota law on the matters of construction and interpretation of a contract. There is no reason to believe that South Dakota law would be inconsistent with federal interests or frustrate the objectives of the IRS in the contract at issue here. *See United States v. Applied Pharmacy Consultants, Inc.,* 182 F.3d 603, 606 (8th Cir. 1999).

[¶ 16.] The United States Court of Appeals for the Seventh Circuit has suggested a format for interpreting contracts:

When applying the federal common law rules of contract interpretation we must first determine whether the clause of the contract at issue is ambiguous. *Grun v. Pneumo Abex Corp.,* 163 F.3d 411, 420 (7th Cir.1998) (citing *Ryan v. Chromalloy American Corp.,* 877 F.2d 598, 602 (7th Cir.1989)). The language of a contract is ambiguous if a section of that contract "is subject to reasonable alternative interpretations." *Id.* (citing *Hickey v. A.E. Staley Mfg.,* 995 F.2d 1385, 1389 (7th Cir.1993)). In reviewing

contract language for other possible interpretations, we are required to interpret the language " 'in an ordinary and popular sense as would a person of average intelligence and experience.' " *Id.* (quoting *Pitcher,* 93 F.3d at 411). If a contract is not open to any other reasonable interpretations, and is therefore unambiguous, then the written words of the contract must dictate the disposition of a dispute involving that contract. *Central States, Southeast and Southwest Areas Pension Fund v. Kroger Co.,* 226 F.3d 903, 911 (7th Cir.2000). Furthermore, except for the highly unusual instance "where literal application of a text would lead to absurd results or thwart the obvious intentions of its drafters," if a contract is found to be unambiguous, then we are not to examine any extrinsic evidence. *Grun,* 163 F.3d at 420 (internal quotation marks and citations omitted). When the language of an unambiguous contract "provides an answer, then the inquiry is over." *Id.* (citing *Wikoff v. Vanderveld,* 897 F.2d 232, 238 (7th Cir.1990)).

*Funeral Financial Systems v. U.S.,* 234 F.3d 1015, 1018 (7th Cir.2000).

[¶ 17.] "A contract is ambiguous when application of rules of interpretation leave a genuine uncertainty as to which of two or more meanings is correct." *City of Watertown v. Dakota, Minnesota & Eastern Railroad Co.,* 551 N.W.2d 571, 1996 SD 82, (¶ 13), 551 N.W.2d 571, 574 (1996). Plaintiffs contend that the consents cover only federal income taxes and do not cover self-employment taxes. The defendant acknowledges the language used in the consents but asserts that the term "income tax" includes self-employment taxes under federal law. If there is any ambiguity, the drafter of a contract bears the responsibility of preventing ambiguity, *Ahlers Building Supply, Inc. v. Larsen,* 535 N.W.2d

431, 434 (S.D.1995), and any ambiguities in a contract are interpreted and construed against the drafter, *Production Credit Assoc. of Midlands v. Wynne,* 474 N.W.2d 735, 740 (S.D.1991). That general rule applies equally to the United States. *United States v. Seckinger,* 397 U.S. 203, 210, 90 S.Ct. 880, 884, 25 L.Ed.2d 224 (1970). We do not know at this stage of the record who inserted the word "income" between the word "Federal" and the word "tax" in the blank on the line in each consent. We therefore do not know who the drafter of the language is. This is of no import, of course, if the words "Federal income tax" are not ambiguous. We do know that plaintiffs testified at their depositions that, when they signed the forms, they intended to include self-employment taxes in the consents that they signed. The IRS obviously intended to include self-employment taxes as covered by "income tax." It would have been impossible to compute the amount of self-employment taxes owed until the audits had been completed and the amount of self-employment income had been determined for each year in question. The amounts of self-employment income for each year would obviously impact the amount of income taxes due for each year.

[¶ 18.] The instructions as to who is to sign the consent agreement speak of "income tax, self-employment tax, or FICA tax on tips." This is of little, if any, significance, the reason being that the plaintiffs did not ever read the instructions. They signed what was given to them by their accountant.

[¶ 19.] We know also that federal law specifically includes self-employment tax as part of the income tax. Defendant cites 26 C.F.R. § 1.1401–1(a) which provides, in part:

There is imposed, in addition to other taxes, a tax upon the self-employment

income of every individual at the rates prescribed in section 1401(a) (old-age, survivors and disability insurance) and (b) (hospital insurance) ... This tax shall be levied, assessed, and collected as part of the income tax imposed by subtitle A of the Code and, except as otherwise expressly provided, will be included with the tax imposed by section 1 or 3 in computing any deficiency or overpayment and in computing the interest and additions to any deficiency, overpayment, or tax. Since the tax on self-employment income is part of the income tax ... Furthermore, with respect to taxable years beginning after December 31, 1966, this tax must be taken into account in computing any estimate of the taxes required to be declared under section 6015.

A clearer statement could hardly be found, namely that "the tax on self-employment income is part of the income tax." A person with no income obviously pays no self-employment taxes. As the income earned by virtue of self-employment goes up, the total federal tax on income increases and the tax on self-employment income also increases. The taxpayer with income derived from self-employment or other sources not subject to withholding (e.g. dividends, capital gains, and interest) pays estimated income taxes based upon the total anticipated income not subject to withholding and the quarterly payments must include anticipated self-employment tax. It is levied, assessed, and collected as part of the income tax for administrative convenience. *Messner v. Dorgan*, 228 N.W.2d 311, 318 (N.D.1974). It is nevertheless a tax on income.

In view of the close connection between the self-employment tax and the present income tax, and in the interest of simplicity for taxpayers and economy in administration, your conferees believe that it is preferable to have the tax on self-employment income handled in all particulars as an integral part of the income tax.

1950 U.S.C.C.A.N. 3482, 3502–03.

■ [¶ 20.] A question exists whether the court should give deference to the interpretation by the IRS. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council. Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Chevron* held that:

"The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Morton v. Ruiz*, 415 U.S. 199, 231, 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270 (1974). If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute. Sometimes the legislative delegation to an agency on a particular question is implicit rather than explicit. In such a case, a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.

We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations.

*Id.* at 843–44, 104 S.Ct. at 2782.

■ [¶ 21.] "*Chevron* deference applies when Congress has, either explicitly or implicitly, left a gap in a statute to be filled by a particular agency." *TeamBank v. McClure*, 279 F.3d 614, 618 (8th Cir.

2002). There is no gap in the law to be filled in this case. The law is clear and unambiguous. Further, "*Chevron* deference is generally reserved for interpretations reached through 'relatively formal' administrative procedures, such as 'notice-and-comment rulemaking or formal adjudication.'" *Id.* at 619. There is really no opinion issued by the agency here. The defendant simply advances a legal argument in the course of this litigation. There is therefore no official action by the agency which is thorough and well enough reasoned to merit deference under *Chevron*. *Chevron* deference to the agency interpretation of the statutes and regulations is not necessary here.

■ [¶ 22.] The question remains whether such deference should be given to the agency's interpretation of the words "income tax" as used in the consent agreements. There is a split of authority whether the courts should give *Chevron* deference to an agency's interpretation of a contract in which the agency has a financial interest. The Federal Circuit holds that such deference is inappropriate. *Southern California Edison Co. v. United States*, 226 F.3d 1349, 1357 (Fed.Cir.2000).

> When a party enters into a contract with the government, that party should reasonably expect to be on equal legal footing with the government should a dispute over the contract arise. If courts were generally to adopt a principle of deference to an agency's contract interpretation, such deference could lead the courts to endorse self-serving post-hoc reinterpretations of contracts that an agency might offer in the context of a litigation.

*Id.* This is so even when regulations are essentially incorporated into contracts. *Id.* at 1358. The First Circuit has also held that *Chevron* does not dictate the deference to be given to an agency's inter-

pretation of a contract. *Meadow Green–Wildcat Corp. v. Hathaway*, 936 F.2d 601, 605 (1st Cir.1991).

[¶ 23.] The Tenth Circuit held:

> The principles underlying *Chevron* — that a reviewing court should defer to agency expertise on questions within the scope of the agency's Congressionally delegated powers—clearly dictate that we defer to the Commission's interpretation of such language.

*Northwest Pipeline Corp. v. Fed. Energy Reg. Comm.*, 61 F.3d 1479, 1486 (10th Cir. 1995). The D.C. Circuit likewise holds that *Chevron* "implicitly modified earlier cases that adhered to the traditional rule of withholding deference on questions of contract interpretation." *Williams Natural Gas Co. v. Fed. Energy Reg. Comm.*, 3 F.3d 1544, 1549 (D.C.Cir.1993). The Eleventh Circuit has concluded that the Tenth and D.C. Circuit holdings reflect that majority view:

> *Chevron* suggests that "the institutional advantages of agencies apply to a broad range of administrative activities," and "contract interpretation ... is sufficiently similar to statutory interpretation [that it] warrant[s] deference—especially when the interpretation involves a policy determination within the agency's statutory domain."

*Muratore v. U.S. Office of Personnel Management*, 222 F.3d 918, 922 (11th Cir.2000) (quoting Phillip G. Oldham, Comment, *Regulatory Consent Decrees: An Argument for Deference to Agency Interpretations*, 62 U.Chi.L.Rev. 393, 399–400 (1995)).

■ [¶ 24.] Having said all this, I decline to grant *Chevron* deference because I believe that the words "income tax" in the context of these consent agreements are clear and not ambiguous. The Random House Unabridged Dictionary (Second

Edition) defines "income tax" as "a tax levied on incomes, esp. an annual government tax on personal incomes." Income tax is imposed on all income, whether it be from salary, wages and tips, farm income, interest, dividends, capital gains from the sale of property, or income from a trade or business. All these forms of income are reported on the federal income tax return to compute adjusted gross income and then taxable income. The self-employment tax is imposed only on those who showed net farm profit on Schedule F or net profit from a non-farm business on Schedule C to Form 1040.

[¶ 25.] The Court has looked at *Jefferson County v. Acker*, 527 U.S. 423, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999), a case holding that a county could impose a franchise tax on federal judges (and others, of course) which franchise tax was as a matter of law based on income. "In *Howard v. Commissioners of Sinking Fund of Louisville*, 344 U.S. 624, 73 S.Ct. 465, 97 L.Ed. 617 (1953), the Court held that a 'license fee' similar in relevant respects to Jefferson County's was an 'income tax' for purposes of a federal statute that defines 'income tax' as 'any tax levied on, with respect to, or measured by, net income, gross income, or gross receipts,' 4 U.S.C. § 110(c)." 527 U.S. at 438, 119 S.Ct. 2069. The result reached in the present case is at least consistent with *Jefferson County* and *Howard*. Self-employment taxes clearly constitute a tax on income, i.e. an income tax. The words "federal income tax" include as a matter of law the federal self-employment tax.

■ [¶ 26.] Assuming, however, that the words "income tax" as used in the consent forms are ambiguous, the court would look to the intentions of the parties at the time the consent forms were executed. That mutual intention was clearly to the effect that the periods of assessment for self-employment taxes were also being extended. Any other interpretation would lead to absurd results and would defeat the intentions of the parties who executed the consents.

[¶ 27.] "The pleadings, depositions ... on file ... show that there is no genuine issue as to any material fact" as to whether or not the signed consent forms extended the period in which the defendant could legally act. The plaintiffs are not entitled to a partial summary judgment on Counts IV, V, and VI. The defendant is entitled to a partial summary judgment to the effect that the words "federal income tax" as used in the consent forms and as understood by all parties at that time include federal self-employment taxes.

[¶ 28.] Based upon the foregoing,

[¶ 29.] IT IS ORDERED:

(1) Plaintiffs' motion for partial summary judgment, Doc. 14, is denied.

(2) Defendant's motion for partial summary judgment, Doc. 17, is granted as set forth above.

[¶ 30.] Dated this 13th day of June, 2002.