**SOUTHWESTERN BELL TELEPHONE COMPANY, Plaintiff,**

v.

**CONNECT COMMUNICATIONS, CORP., et al., Defendants.**

**No. LR–C–99–197.**

United States District Court,
E.D. Arkansas,
Western Division.

Sept. 22, 1999.

H. Edward Skinner, Gill Law Firm, Little Rock, AR, Michael K. Kellogg, Sean A. Lev, Kellogg, Huber, Hansen, Todd & Evans, P.L.L.C., Washington, DC, Timothy Scott Pickering, Southwestern Bell Telephone Company, Oklahoma City, OK, for Southwestern Bell Telephone Company.

J. Mark Davis, N.M. Norton, Jr., Charles L. Schlumberger, Wright, Lindsey & Jennings, Little Rock, AR, for Connect Communications Corporation.

Arthur H. Stuenkel, Paul J. Ward, Arkansas Public Service Commission, Little Rock, AR, for Arkansas Public Service

**1044**

Commission, Jim Von Gremp, Sam I. Bratton, Jr., Betty C. Dickey.

### ORDER OF DISMISSAL

EISELE, District Judge.

Currently pending before this Court are separate Motions to Dismiss that were filed by Defendant Connect Communication Corporation and Defendant Arkansas Public Service Commission. After reviewing the excellent briefs submitted by the parties, the Court will GRANT the motions and the case will be DISMISSED.

### I. BACKGROUND

This case involves an Interconnection Agreement that Southwestern Bell Telephone Company ("SWBT") and Connect Communications Corporation ("Connect") executed on June 23, 1997 as required by the Federal Telecommunications Act of 1996. The facts relevant to the currently pending motions are undisputed. These facts, however, must be set forth with some detail in order to clarify the issues presented, and the Court's rulings thereon.

In 1996, Congress passed the Telecommunications Act of 1996, Pub.L. No. 140–140, 110 Stat. 56 (1996). The Act was passed to end telephone monopolies in order to facilitate the entrance of new companies into the telecommunications market. *See AT&T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 119 S.Ct. 721, 726–27, 142 L.Ed.2d 835 (1999). The Telecommunications Act is a unique hybrid of statutory and common law that divides decision-making authority between the Federal Communications Commission (FCC), State commissions, and private parties. This interrelationship[1], however, creates a myriad of issues regarding subject-matter jurisdiction, as will be fully discussed in this order

One of the ways the Telecommunication Act attempts to facilitate competition in the telecommunications industry is to force incumbent telephone companies, such as SWBT, to allow newer telephone companies, such as Connect, to "interconnect" into the existing phone lines, and for the parties to receive "reciprocal compensation" for shared use of the lines. 47 U.S.C. § 251, *see also AT&T Corp.*, 119 S.Ct. at 726–27. Instead of establishing a static statutory scheme governing these interconnections, Congress instructed the parties to enter into private interconnection agreements establishing the terms of, and compensation for, interconnection. *See* 47 U.S.C. §§ 251, 252. Hence, Congress allowed private contracts, instead of statutory or regulatory law, to govern the interconnection relationships between the parties. In general, the agreements typically provide that the phone company that initiates the call must pay a per-minute fee to the other phone company that terminates the call.

The Telecommunications Act provides for two different methods for the telephone companies to reach interconnection agreements. First, pursuant to 47 U.S.C. § 252(a), the telephone companies may voluntarily negotiate and enter into a private and binding interconnection agreement. 47 U.S.C. § 252(a)(1). If the parties have difficulty resolving a conflict during this process, they can ask the State commission, here the Arkansas Public Service Commission (APSC), to "participate in the negotiation and to mediate any differences." 47 U.S.C. § 252(a)(2). As a second alternative, the telephone companies may petition the State commissions[2] to help them reach an interconnection agreement through arbitration. 47 U.S.C. § 252(b). If the arbitration method is utilized, the parties must comply with detailed arbitration and pricing standards that are delineated in subsections (c) and

---

1. In *AT & T Corp.*, Justice Scalia characterized the interrelationship created by the Telecommunications Act as "surpassing strange" and "decidedly novel." 119 S.Ct. at 730–33, nn. 6 & 10.

2. If the State commission "fails to act or carry out its responsibility under this section," the Federal Communications Commission shall assume jurisdiction over the matter. *See* 47 U.S.C. § 252(e)(5).

(d). 47 U.S.C. § 252(c) and (d). The Act, however, clarifies that the parties do not have to comply with the terms of subsections 252(c) and (d) if they reach a private interconnection agreement through voluntary negotiations as provided for in subsection 252(a). *See* 47 U.S.C. § 252(a)(1). Once the parties reach an interconnection agreement by either of these two methods, the contract must be approved by the State commission pursuant to 47 U.S.C. § 252(e). The question presented by this case is: who has the authority to interpret and enforce interconnection agreements after they have been approved?

Pursuant to the Telecommunications Act, Connect requested interconnection with SWBT's existing lines. On June 23, 1997, SWBT and Connect entered into an Interconnection Agreement through voluntary negotiations and without APSC involvement. The part of the Agreement in dispute in this case is the section that establishes a reciprocal compensation rate for local phone calls or "local traffic" between SWBT's and Connect's customers. In particular, the Agreement provides that:

A. *Reciprocal Compensation for Termination of Local Traffic*

    1. Applicability of Rates:

        a. The rates, terms, and conditions in this subsection A apply only to the termination of *Local Traffic,* except as explicitly noted.

        b. CONNECT agrees to compensate SWBT for the termination of CONNECT *Local Traffic* originated by CONNECT end users in the SWBT exchanges described in Appendix DCO and terminating to SWBT end users located within those exchanges reference therein. SWBT agrees to compensate CONNECT for the termination of SWBT *Local Traffic* originated by SWBT end users in the SWBT exchanges described in Appendix DCO and terminating to CONNECT end users located within those exchanges reference therein.

(Emphasis added.) The Appendix to the Agreement contains the following definition of "local traffic":

> "Local Traffic" means traffic that originates and terminates within a SWBT exchange including mandatory local calling scope arrangements. Mandatory Local Calling Scope is an arrangement that requires end users to subscribe to a local calling scope beyond their basic exchange serving area.

Sometime thereafter, the APSC approved the Agreement between SWBT and Connect as required by section 252(e) of the Telecommunications Act of 1996.

In 1998, a dispute arose between SWBT and Connect regarding connections to Internet Service Providers (ISP's). The issue was whether the 1997 Interconnection Agreement required SWBT to reimburse Connect when SWBT initiated a call from a SWBT customer to Connect's ISP customer, who then connected the caller to the Internet. SWBT contended that these calls were not "local traffic," subject to reimbursement under the 1997 Agreement, because the calls "terminated" at some distant Internet site instead of at Connect's local ISP customer. In contrast, Connect argued that the calls were "local traffic" because the call "terminates" at its local ISP customer.

When SWBT refused to compensate Connect for these calls, Connect filed a complaint asking the APSC to:

> declare that the term "Local Traffic," *as used in Article III and Appendix DEFINED, paragraph P of the Interconnection Agreement,* includes calls from SWBT's end users to Connect's end users that are internet service providers ... and to order SWBT to compensate Connect at the applicable reciprocal compensation rate specified in the Interconnection Agreement

*See Connect Communications Corp. v. Southwestern Bell Tel. Co.,* No. 98–167–C, at 2, 1998 WL 974059 (Ark.Pub.Serv. Comm'n December 31, 1998) (emphasis added). Similarly, in its Answer, SWBT

denied "that traffic to an ISP is local traffic *as that term is defined in the Interconnection Agreement.*" *Id.* (emphasis added). Hence, the parties couched their complaint before the APSC as a matter of contract interpretation instead of a question of federal law.

The parties also raised before the APSC an issue of subject-matter jurisdiction. Interestingly, the parties took different positions before the APSC on the jurisdictional issue as they now do before this Court. In particular, SWBT argued that the APSC did not have subject matter jurisdiction to resolve the conflict because the issue was a matter of contract interpretation that properly belonged in state court. In response, Connect argued that the APSC had jurisdiction pursuant to 47 U.S.C. § 252(e), which granted the Commission authority to approve interconnection agreements. After concluding that it had subject matter jurisdiction[3], the APSC ruled that the calls to Connect's local ISP customers were local calls, or "local traffic," and thus SWBT was required to compensate Connect for terminating the calls. *Id.* at 9 & 15. It is, however, impossible to determine from the opinion whether the APSC based this conclusion on the language of the contract or upon federal law. At any rate, on December 31, 1998, the APSC directed SWBT to comply with the 1997 Agreement, and it subsequently denied SWBT's request for a rehearing on February 19, 1999.

On March 19, 1999, SWBT filed this current action against Connect, the APSC, and three members of the APSC in their official capacities. In the complaint, SWBT asked this Court to declare that the APSC's 1998 Order was "unlawful," to enjoin the Defendants from enforcing that Order, and to require the Defendants to allow SWBT to "recoup any funds it has released into a separate account as a result of the APSC's decision at issue here." (Complaint, at 9.) Similar to the APSC order, it is impossible to tell from the Complaint whether SWBT is contending that the APSC's order violates federal law and/or was an erroneous interpretation of the 1997 Agreement. For instance, in Count 1 of the Complaint SWBT contends that the "APSC's ruling in Docket No. 98–167–C that some portion of Internet communications constitutes 'Local Traffic' is inconsistent with federal law and with the language of the Agreement, is arbitrary and capricious, and is not the result of reasoned decision making." (Complaint, at 8). However, in other portions of the Complaint, SWBT only contends that the APSC's ruling was "a clear error of federal law" and that the APSC "misapplied federal law." (Complaint, at 1–2). Connect and the APSC responded to the Complaint by filing motions to dismiss for lack of subject matter jurisdiction, failure to state a claim for which relief can be granted, and state immunity.

## II. DISCUSSION

As mentioned, both SWBT and APSC have filed motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. It is well settled that the burden of establishing subject matter jurisdiction rests upon the plaintiff. *Hoekel v. Plumbing Planning Corp.*, 20 F.3d 839, 840 (8th Cir.1994); *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir.1993). When determining whether to dismiss under Rule 12(b)(1), the factual allegations concerning jurisdictions are presumed to

---

3. The issue of whether the *APSC* has subject matter jurisdiction to interpret and enforce the interconnection agreement, which is simply a private contract, is not before this Court. The Court, however, questions the APSC's determination that it had subject matter jurisdiction in light of the Arkansas statute, which declares in two subsections that the APSC "*shall not* have authority to order payment of damages or to adjudicate disputes in which the right asserted is a *private right found in the common law of contracts,* torts, or property." Ark.Code Ann. § 23–3–119(d) & (f)(2) (1987). As will be further discussed in this opinion, the Telecommunications Act gives the State commissions authority to approve or reject interconnection agreements, but the Act is silent as to whether the commissions have jurisdiction to interpret and enforce those agreements. *See* 47 U.S.C. § 252(e).

be true, and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction. *Titus,* 4 F.3d at 593. SWBT claims that this Court has subject matter jurisdiction to hear this case pursuant to 47 U.S.C. § 252(e) or 28 U.S.C. § 1331. As mentioned previously, it is unclear whether SWBT claims that the APSC misconstrued the agreement, and/or whether the determination was contrary to federal law. Hence, the Court will consider whether it has jurisdiction to consider either allegation.

### A. Contract Interpretation & Enforcement

First, the Court will determine if it has subject matter jurisdiction, pursuant to section 252(e) of the Telecommunications Act, to review the APSC's interpretation of the parties' 1997 Interconnection Agreement. The starting point for interpreting a statute is the statute itself. *Midwestern Mach. Inc. v. Northwest Airlines, Inc.,* 167 F.3d 439, 441 (8th Cir.1999); *Norwest Bank v. Doth,* 159 F.3d 328, 333 (8th Cir. 1998). Moreover, when interpreting a statute, a court must give effect to the intent of Congress. *Atlantic Mut. Ins. Co. v. Commissioner of Internal Revenue,* 523 U.S. 382, 118 S.Ct. 1413, 1416, 140 L.Ed.2d 542 (1998); *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

Section 252(e) provides, in relevant part, that:

**(e) Approval by State commission.**

**(1) Approval required.** Any interconnection agreement adopted by negotiation or arbitration shall be submitted for approval to the State commission. A State commission to which an agreement is submitted *shall approve or reject the agreement,* with written findings as to any deficiencies.

**(2) Grounds for rejection.** The State commission may *only reject —*

(A) an agreement (or any portion thereof) *adopted by negotiation* under subsection (a) of this section if it finds that—

(i) the agreement (or portion thereof) discriminates against a telecommunications carrier not a party to the agreement; or

(ii) the implementation of such agreement or portion is not consistent with the public interest, convenience, and necessity; or

(B) an agreement (or any portion thereof) *adopted by arbitration* under subsection (b) if it finds that the agreement does not meet the requirements of section 251, including the regulations prescribed by the Commission pursuant to section 251, or the standards set forth in subsection (d) of this section.

**(3) Preservation of authority.** Notwithstanding paragraph (2), but subject to section 253, nothing in this section shall prohibit a State commission from establishing or enforcing other requirements of State law in its review of an agreement, including requiring compliance with intrastate telecommunications service quality standards or requirements.

**(4) Schedule for decision.** If the State commission does not act to approve or reject the agreement within 90 days after submission by the parties of an agreement adopted by negotiation under subsection (a) of this section, or within 30 days after submission by the parties of an agreement adopted by arbitration under subsection (b) of this section, the agreement shall be deemed approved. *No State court shall have jurisdiction to review the action of a State commission in approving or rejecting an agreement under this section.*

\*    \*    \*    \*    \*    \*

**(6) Review of State commission actions....** In any case in which a State commission makes a *determination under this section,* any party aggrieved by such determination may bring an action in an appropriate Federal district court *to determine whether the agreement or*

*statement meets the requirements of section 251 and this section.*

47 U.S.C. § 252(e) (emphasis added).

The plain language of section 252(e)(1) unquestionably gives the APSC the exclusive authority to approve or reject interconnection agreements · for the specific grounds listed in section 252(e)(2). The Act then unequivocally declares that "[i]n any case in which a State commission makes a determination *under this section,* any party aggrieved by such determination may bring an action in an appropriate Federal district court *to determine whether the agreement or statement meets the requirements of section 251 and this section."* 47 U.S.C. § 252(e)(6) (emphasis added). Section 252(e)(4) buttresses this grant of jurisdiction to the federal courts by pronouncing that "[n]o State court shall have jurisdiction to review the action of a State commission *in approving or rejecting an agreement under this section."* 47 U.S.C. § 252(e)(4) (emphasis added). Hence, there is no question that state commissions have authority to approve or reject and interconnection agreement, and the federal district courts · have exclusive jurisdiction to review that determination.

■ The question, however, remains as to who has jurisdiction to interpret and enforce private interconnection agreements after they have been approved. Generally, contract interpretation and enforcement is an issue of common law that properly belongs in the jurisdiction of the state courts. The Court can find nothing in the Telecommunications Act that divests the state courts of that jurisdiction. Instead, section 252(e) only conferred federal jurisdiction "to determine whether the agreement or statement *meets the requirements of section 251 and this section."* In other words, the plain language of the Telecommunications Act clearly grants federal courts jurisdiction only to determine if the agreement meets the require-

ments of *federal law,* i.e.; sections 251 and 252 of the Telecommunications Act[4]. For these reasons, the Court concludes that the plain language of Act does not confer upon federal courts jurisdiction to review a State Commission's order interpreting and enforcing an interconnection agreement.

In reaching this conclusion, the Court realizes that this is a novel issue that has only been addressed by a few courts, and, in particular, has not been conclusively resolved by the Eighth Circuit. In *Iowa Utilities Board v. F.C.C.,* 120 F.3d 753 (8th Cir.1997), *rev'd in part,* 525 U.S. 366, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999), the Eighth Circuit held that several rules promulgated by the Federal Communications Act, in regard to the Telecommunications Act of 1996, were invalid. The Court also held that the FCC did not have authority to review or enforce interconnection agreements approved by State commissions under 47 U.S.C. § 252(e). *Id.* at 803–4. The Court, however, further declared in dicta that:

> We also believe that state commissions retain the primary authority to enforce the substantive terms of the agreements made pursuant to sections 251 and 252. Subsection 252(e)(1) of the Act explicitly requires all agreements under the Act to be submitted for state commission approval. 47 U.S.C.A. § 252(e)(1) (West Supp.1997). We believe that the state commissions' *plenary authority to accept or reject these agreements necessarily carries with it the authority to enforce the provisions of agreements that the state commissions have approved.* Moreover, the state commissions' enforcement power extends to ensuring that parties comply with the regulations that the FCC is specifically authorized to issue under the Act, because the Act empowers state commissions to reject arbitrated agreements on the basis that they violate the FCC's regulations. *See id.* at § 252(e)(2)(B). Again, we believe

4. In this case, there is no question as to whether the Agreement meets the requirements of 251, because the parties did not use the arbitration process. Likewise, the parties

have never asked this Court to review the APSC's initial determination that the Agreement met the approval requirements found in section 252(e)(2).

that the power to approve or reject these agreements based on the FCC's requirements includes the power to enforce those requirements.

*Id.* at 804 (emphasis added). In an accompanying footnote, the Court opined that "[w]e believe that the enforcement decisions of state commissions would also be subject to *federal district court review* under subsection 252(e)(6)." *Id.* at 804, n. 24 (emphasis added). The Court, however, is unpersuaded by this language because it is dicta, and more importantly, because the case was reversed in part by the United States Supreme Court in *AT & T Corp. v. Iowa Utilities Bd.*, 525 U.S. 366, 119 S.Ct. 721, 142 L.Ed.2d 835 (1999). In particular, the Supreme Court reversed the Eighth's Circuit's holding (from which the dicta was obtained) that the FCC had jurisdiction to review agreements approved by State commissions because the issue was not ripe for review. *Id.* 119 S.Ct. at 733. Hence, there is no viable guidance from the Eighth Circuit on this issue.

In *Michigan Bell Tel. Co. v. MFS Intelenet of Michigan, Inc., TCG,* 16 F.Supp.2d 817, 824 (W.D.Mich.1998), the Michigan court held that pursuant to 47 U.S.C. § 252(e) the federal courts have jurisdiction to review a state commission's interpretation and enforcement of an interconnection agreement. The Michigan court reached this conclusion by inferring that 252(e)'s grant of jurisdiction to review commission "determinations" included a commission's interpretation and construction of a contract. *Id.*

The Court disagrees with the Michigan holding for several reasons. First, it ignores the remaining language of section 252(e)(6), which explicitly limits the federal court's jurisdictions to the reviewing a commission's determination that "the agreement or statement meets the requirements of section 251 and this section." *See* 47 U.S.C. § 252(e)(6). Secondly, the Michigan holding is in contravention of the Congress's clear intention to allow the State's to retain jurisdiction over the local phone companies, and for the parties to govern their rela-

tionships by private contract instead of federal regulation or statute. Finally, the First and Seventh Circuit Courts have held that the Telecommunications Act gives the federal courts jurisdiction to review issues of federal, but not state, law. *See Puerto Rico Tel. Co. v. Telecommunications Regulatory Bd.,* 189 F.3d 1 (1st Cir.1999) (holding that the federal court did not have jurisdiction to review a state commission's determination that an agreement violated a state statute imposing a duty to act in good faith while fulfilling contract obligations); *Illinois Bell Tel. Co. v. Worldcom Technologies, Inc.,* 179 F.3d 566, 571–73 (7th Cir.1999) (holding that federal courts have jurisdiction to review the State commission's ruling "not to determine whether [the commission] correctly applied principles of state contract law, but to see whether [the commission's] decision violates federal law, as set out in the Act or in the FCC interpretation").

For these reasons, the Court rules that section 252(e) of the Telecommunications Act does not give the federal district courts jurisdiction to review a state commission's interpretation and enforcement of a privately negotiated interconnection agreement because that is a matter of state contract law that should properly be reviewed by a state court. Accordingly, SWBT's request for the Court to review the APSC's interpretation and enforcement of the parties' 1997 Interconnection Agreement is dismissed, pursuant to Fed. R.Civ.P. 12(b)(1), for lack of subject matter jurisdiction.

**B. Violation of Federal Law**

Next, SWBT asserts that the APSC's ruling is contrary to federal law, and thus this Court has subject matter jurisdiction under either 47 U.S.C. § 252 or the federal question statute, 28 U.S.C. § 1331. As mentioned previously, the Seventh Circuit held that federal courts have jurisdiction to determine if a state commission's ruling violates the Telecommunications Act or the FCC's interpretation of the Act. *See Illinois Bell Tel. Co.,* 179 F.3d at 573.

As in *Illinois Bell Telephone*, the plaintiff in this case, SWBT, contends that the APSC's ruling is contrary to a FCC ruling that was released on February 26, 1999. *See Declaratory Ruling in CC Docket No. 96–98 and Notice of Proposed Rulemaking in CC Docket No. 99–68* (February 26, 1999). In particular, SWBT contends that the FCC declared, as a matter of law, that all ISP calls are interstate, and not local, and thus they are not covered by interconnection agreements for reciprocal enforcement. If this were a correct assertion, the APSC's ruling could be contrary to federal law. SWBT, however, has misconstrued the FCC's ruling.[5]

■ As acknowledged by the Seventh Circuit in *Illinois Telephone*, the FCC ruled that "for jurisdictional purposes" ISP traffic is not a local call, but instead is a continuous transaction from the end user to a distant Internet site that is often located in another state. *Declaratory Ruling*, at 9–11; *see also Illinois Telephone*, 179 F.3d at 571–72. Once it determined that it had jurisdiction to issue a rule on the matter, the FCC announced its intention to adopt a rule, at a future date, and asked for comments on the matter. *Declaratory Ruling*, at 18–25. The FCC did not, however, promulgate any affirmative ruling on the issue of whether an ISP call is, as a matter of federal law, a local call. *Id.* Instead, the FCC declared that:

> We find no reason to interfere with state commission findings as to whether reciprocal compensation provisions of interconnection agreements apply to ISP-bound traffic, pending adoption of a rule establishing an appropriate interstate compensation mechanism. We seek comment on such a rule in Section IV, below.
>
> Currently, the Commission has no rule governing inter-carrier compensation for ISP-bound traffic. *In the absence of such a rule, parties may voluntarily include this traffic within the scope of their interconnection agreements under sections 251 and 252 of the Act,* even if these statutory provisions do not apply as a matter of law. *Where parties have agreed to include this traffic ·within their section 251 and 252 interconnection agreements, they are bound by those agreements,* as interpreted and enforced by the state commissions.

*Id.* at 15 (emphasis added). The FCC's pronouncement clarifies that contract law, and not federal law, determines whether ISP-bound traffic is "local traffic." Hence, there is no merit to SWBT's argument that the APSC's ruling is contrary to federal law.

In sum, the Court concludes that SWBT has unsuccessfully tried to make a federal question out of an issue that is properly characterized as a matter of state contract law. In order to determine whether ISP calls are "local traffic," and correspondingly, whether SWBT is required to compensate Connect for terminating these calls, the parties must turn to the wording of their 1997 Agreement. For these reasons, the Court concludes that SWBT has failed to satisfy its burden of establishing that this court has subject matter jurisdiction to hear this case under either 42 U.S.C. § 252 or 28 U.S.C. § 1331, as was asserted in its Complaint. Because the case is dismissed pursuant to Fed.R.Civ.P. 12(b)(1), there is no need for the Court to address the remaining arguments contained in the Motions to Dismiss, or the other motions pending in this case.

### III. CONCLUSIONS

IT IS THEREFORE ORDERED that the Defendants' Motions to Dismiss for lack of subject matter jurisdiction[6] be, and

---

5. The parties have not addressed the fact that the FCC issued its ruling on February 26, 1999, which was almost two months *after* the ASPC entered its Order on December 31, 1998.

6. Docket Nos. 9 & 11.

they are hereby, GRANTED, and the case is DISMISSED.

IT IS THEREFORE FURTHER OR-DERED that SWBT's Motion to Stay[7], the APSC's Motion for an Extension of Time to Respond to the Motion to Stay[8], and SWBT's Motion. for Summary Judgment[9], be and they are hereby, DISMISSED as MOOT.

---

7. Docket No. 7.

8. Docket No. 14.

9. Docket No. 20.