# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 99-3952

_____

|  |  |  |
|---|---|---|
| Southwestern Bell Telephone Company, | * | |
| | * | |
| | * | |
| Appellant, | * | |
| | * | |
| United States; Federal Communications Commission, | * | |
| | * | |
| | * | |
| Intervenors on Appeal, | * | |
| | * | |
| v. | * | |
| | * | |
| Connect Communications | * | |
| Corporation; Arkansas Public Service | * | |
| Commission; Jim Von Gremp, in his | * | Appeal from the United States |
| official capacity as Chairman of the | * | District Court for the |
| Arkansas Public Service Commission; | * | Eastern District of Arkansas. |
| Sam I. Bratton, Jr., in his official | * | |
| capacity as Commissioner of the | * | |
| Arkansas Public Service Commission; | * | |
| Betty C. Dickey, in her official | * | |
| capacity as Commissioner of the | * | |
| Arkansas Public Service Commission, | * | |
| | * | |
| Appellees. | * | |
| | * | |
| ---------------------------- | * | |
| | * | |
| MCI Worldcom, Inc., | * | |
| | * | |
| Amicus on Behalf of Appellee. | * | |

_____

Submitted: June 13, 2000
Filed: September 12, 2000
_____

Before BOWMAN, MORRIS SHEPPARD ARNOLD, and BYE, Circuit Judges.
_____

BOWMAN, Circuit Judge.

The Telecommunications Act of 1996, among other things, aims to jump-start competition in the market for local telephone service. See AT&T Corp. v. Iowa Utils. Bd., 525 U.S. 366, 371 (1999). One way Congress, through the Act, attempted to move toward this goal is by requiring the incumbent owner of a local telephone network to provide network access to its would-be competitors. See 47 U.S.C. § 251(c)(2) (Supp. III 1997). The Act describes a process for establishing the price and other terms for the provision of network access. Specifically, the incumbent is required to negotiate in good faith with its competitor, and, if the parties fail to reach a deal on their own, they submit open questions for arbitration by the relevant state commission. See id. §§ 251(c)(1), 252(a), (b). States, if they wish, may opt out, leaving the Federal Communications Commission (FCC) to arbitrate in their stead. See id. § 252(e)(5).

All such network access agreements, however reached, must be approved by the state commission or, in its absence, by the FCC. See id. § 252(e)(1), (5). The state commission must ensure that the agreement is consistent with certain requirements of the Act, but may also enforce requirements of state law such as intrastate service quality standards. See id. § 252(e)(2), (3). A party aggrieved by a "determination" of a state commission under § 252 may bring an action in federal district court. Id. § 252(e)(6). State courts do not have jurisdiction to review decisions of state commissions "approving or rejecting an agreement" under § 252. Id. § 252(e)(4).

-2-

In this case, Connect Communications Corporation wanted access to the local telephone network of incumbent Southwestern Bell Telephone Company. Connect and Southwestern Bell reached an agreement on their own—arbitration was not required. They submitted their agreement to the Arkansas Public Service Commission, which approved it. Neither side sought review in the federal courts (or elsewhere). Under the terms of the agreement, Southwestern Bell allows Connect to interconnect with Southwestern Bell's network so that Connect can sell local telephone service. In line with statutory requirements, see id. § 251(b)(5), the agreement requires reciprocal compensation for "local traffic." When a Southwestern Bell customer places a local call to a Connect customer, the caller is using part of Connect's network, and Southwestern Bell must compensate Connect for that usage. The rates of compensation are established in the agreement between Connect and Southwestern Bell.

A dispute between Southwestern Bell and Connect arose from the reciprocal compensation arrangement. Several of Connect's customers are internet service providers (ISPs). The ISPs, as relevant here, provide modem-based internet access to their customers. The ISPs' customers, through their computers, place telephone calls to their ISPs, which connect the customers to the internet. These internet-connecting calls tend to be longer than average local calls and many of the ISPs' customers get their local telephone service from Southwestern Bell. Thus, if these internet-connecting calls are "local traffic," then Southwestern Bell must pay reciprocal compensation to Connect. If the calls are not "local traffic," then reciprocal compensation is not required. This is the heart of the dispute between Connect and Southwestern Bell, but, as we shall see, it is not the issue we are called upon to decide.

At some point in 1998, Southwestern Bell informed Connect that it did not consider the internet-connecting calls to be "local traffic" within the meaning of their agreement, and it would not pay Connect further reciprocal compensation based on those calls. In June 1998, Connect filed a complaint with the Arkansas Public Service Commission seeking a declaration that the internet-connecting calls were "local traffic"

and an order requiring Southwestern Bell to compensate Connect for the calls. The Commission determined that it had jurisdiction and ultimately determined that the internet-connecting calls were "local traffic."

Southwestern Bell filed suit in federal court challenging the Commission's decision. Southwestern Bell named Connect as a defendant, and also named the Arkansas Public Service Commission as well as the individual Commissioners who make up the Commission. (For ease of reference, we shall refer to the Arkansas state defendants collectively as "the Commission.") The Commission and Connect moved to dismiss for lack of subject-matter jurisdiction. The District Court granted the motions, concluding that the "the plain language of the Telecommunications Act clearly grants federal courts jurisdiction only to determine if the [interconnection] agreement meets the requirements of <u>federal law</u> . . . [and therefore] does not confer upon federal courts jurisdiction to review a State Commission's order interpreting and enforcing an interconnection agreement." <u>Southwestern Bell Tel. Co. v. Connect Communications Corp.</u>, No. LR-C-99-197, at 10 (E.D. Ark. Sept. 22, 1999). This appeal followed. The United States and the FCC appear on appeal as intervenors, and MCI Worldcom, Inc. appears as amicus curiae.

I.

It is axiomatic that the federal courts lack plenary jurisdiction. <u>See</u> <u>Godfrey v. Pulitzer Publ'g Co.</u>, 161 F.3d 1137, 1141 (8th Cir. 1998). The inferior federal courts may only exercise jurisdiction where Congress sees fit to allow it. Here, there are two alleged statutory grounds for jurisdiction: 47 U.S.C. § 252(e)(6), part of the Telecommunications Act of 1996, and 28 U.S.C. § 1331 (1994), the "federal question" jurisdiction statute. Because we find that § 252(e)(6) provides jurisdiction here, we do not reach the argument based on § 1331.

We begin, of course, with the text of § 252(e)(6). "In any case in which a State commission makes a determination under this section [252], any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section [252]." 47 U.S.C. § 252(e)(6). Connect and the Commission contend that this language grants federal courts jurisdiction to review commission decisions rejecting or approving interconnection agreements, but not interpreting or enforcing them. Essentially, they assert two independent arguments supporting this conclusion. First, they claim that commission decisions interpreting or enforcing interconnection agreements do not involve a "determination" under § 252. Second, they contend that interpretation and enforcement determinations do not present questions about whether "the agreement or statement meets the requirements" of §§ 251 and 252.[1] We address these contentions in turn.

A.

The Act provides that an interconnection agreement, reached either by negotiation or arbitration, must be submitted to the state commission for approval. See 47 U.S.C. § 252(e)(1). This grant of power to state commissions necessarily includes the power to enforce the interconnection agreement. See Southwestern Bell Tel. Co. v. Public Util. Comm'n, 208 F.3d 475, 479-80 (5th Cir. 2000) (citing Iowa Utils. Bd.

---

[1] We have previously reached the conclusion that "enforcement decisions of state commissions would . . . be subject to federal district court review under subsection 252(e)(6)." Iowa Utils. Bd. v. FCC, 120 F.3d 753, 804 n.24 (8th Cir. 1997). This statement would appear to control the instant case. However, the Supreme Court partially reversed our judgment, see AT&T Corp. v. Iowa Utils. Bd., 525 U.S. 366 (1999), and our statement about jurisdiction was probably dicta anyway. Therefore, we address the matter anew and fully consider the arguments of the Commission and Connect.

v. FCC, 120 F.3d 753, 804 (8th Cir. 1997), aff'd in part, rev'd in part on other grounds sub nom. AT&T Corp. v. Iowa Utils. Bd., 525 U.S. 366 (1999)).

The parties all agree that state commissions have this enforcement power, and the only dispute concerns its source. The FCC interprets § 252 to provide state commissions with enforcement power and, indeed, enforcement responsibility. See Starpower Communications, LLC, No. FCC 00-216, 2000 WL 767701, ¶¶ 5-6 (FCC June 14, 2000) (opinion and order). We must defer to the FCC's view so long as it is a reasonable interpretation of an ambiguous statute. See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984).

While the arguments of the Commission and Connect appear to reject the proposition that the state commissions' power to enforce federally-mandated interconnection agreements comes from § 252, they suggest no likely alternative. Arkansas law[2] alone cannot be the source. "[T]he question . . . is not whether the Federal Government has taken the regulation of local telecommunications competition away from the States. With regard to the matters addressed by the 1996 Act, it unquestionably has." AT&T Corp., 525 U.S. at 379 n.6. The new regime for

---

[2]This contention is implied but not expressly argued by Connect and the Commission. In its decision in this case, the Arkansas Public Service Commission reached the conclusion that § 252 provided the Commission with jurisdiction to enforce the interconnection agreement. Later, another party filed a complaint with the Commission against Southwestern Bell, claiming, much like Connect had, that Southwestern Bell had breached an interconnection agreement by not providing reciprocal compensation for internet-connecting calls. In a proceeding delegated to an administrative law judge, the general staff of the Commission moved to dismiss the complaint for lack of jurisdiction, primarily based on the District Court's decision in this case. The Administrative Law Judge determined that state law, not federal law, provided the Commission with jurisdiction. See American Communications Servs. v. Southwestern Bell Tel. Co., No. 00-071-C, Order No. 2, at 3-6 (Ark. Public Service Commission June 12, 2000). For the reasons expressed in the text, we do not agree.

regulating competition in this industry is federal in nature, see id., and while Congress has chosen to retain a significant role for the state commissions, the scope of that role is measured by federal, not state law. Therefore, while the grant of state commission enforcement power in § 252 is implicit rather than express, we can reach no conclusion but to agree with the FCC's determination that the state commissions' power to enforce interconnection agreements springs from § 252.

With this conclusion in mind, it is plain that the jurisdictional grant in § 252(e)(6) includes review of enforcement determinations. The jurisdictional provision extends to "any case" where the state commission makes a "determination" under § 252. As we have explained, the state commission's power to enforce a federally-mandated interconnection agreement arises from § 252, and thus a state commission's decision enforcing the agreement is a "determination" under that section. Both of the federal courts of appeals to address the issue directly have reached the same conclusion. See MCI Telecomms. Corp. v. Illinois Bell Tel. Co., 2000 WL 1010863, at *12 (7th Cir. July 24, 2000); Southwestern Bell, 208 F.3d at 480-81.

B.

We next address the second argument against jurisdiction, which was relied upon by the District Court in its Order of Dismissal. After noting that "[g]enerally, contract interpretation and enforcement is an issue of common law that properly belongs in the jurisdiction of state courts," the District Court quoted § 252(e)(6) for the proposition that federal jurisdiction only exists "'to determine whether the agreement or statement meets the requirements of section 251 and this section.'" Connect Communications Corp., No. LR-C-99-197, at 9-10 (quoting 47 U.S.C. § 252(e)(6)) (emphasis added by District Court). Thus, the District Court said:

> [T]he plain language of the Telecommunications Act clearly grants federal
> courts jurisdiction only to determine if the agreement meets the

requirements of <u>federal law</u>, i.e.[,] sections 251 and 252 of the Telecommunications Act. For these reasons, the Court concludes that the plain language of [the] Act does not confer upon federal courts jurisdiction to review a State Commission's order interpreting and enforcing an interconnection agreement.

<u>Id.</u> at 10 (footnote omitted). Ultimately, the District Court ruled that the statute "does not give the federal district courts jurisdiction to review a state commission's interpretation and enforcement of a privately negotiated interconnection agreement because that is a matter of state contract law that should properly be reviewed by a state court." <u>Id.</u> at 12.

We disagree. The allegations in this case demonstrate that a state commission's enforcement proceeding can raise federal law claims. Southwestern Bell and Connect reached an interconnection agreement without arbitration, and the Arkansas Commission approved it. Both Southwestern Bell and Connect were satisfied with the agreement, so neither sought federal review. But when the terms of the agreement were fleshed out with actual experience, the parties found themselves at odds over an issue that the plain language of the agreement arguably does not resolve: are internet-connecting calls local traffic? Connect sought action from the Commission, which it received, in the form of a clarification of the interconnection agreement, that internet-connecting calls are indeed local traffic. Notably, Connect did not simply file a breach of contract action in state court. Likewise, the substance of Southwestern Bell's complaint is that the Commission's determination is contrary to federal law.

The issue at the very center of this case—whether internet-connecting calls are local traffic—has been the subject of an FCC ruling. <u>See</u> <u>Implementation of the Local Competition Provisions in the Local Telecommunications Act of 1996, Intercarrier Compensation for ISP-Bound Traffic</u>, 14 F.C.C.R. 3689 (1999). Southwestern Bell argued to the District Court that the Commission's actions were contrary to the FCC ruling. In response, the District Court determined that Southwestern Bell

"misconstrued" the FCC ruling and that Southwestern Bell's argument had "no merit." Connect Communications Corp., No. LR-C-99-197, at 13-14. Subsequently, the D.C. Circuit vacated the FCC ruling and remanded it to the FCC for further proceedings. See Bell Atl. Tel. Co. v. FCC, 206 F.3d 1 (D.C. Cir. 2000). We believe the FCC ruling and its subsequent judicial review demonstrate that there are substantial federal-law questions underlying the dispute in this case. Perhaps the District Court was correct in concluding that the FCC ruling supported the Commission's determination, a question we do not reach, but if so, that would support judgment for Connect and the Commission on the merits, not dismissal for lack of jurisdiction.

In addition, the Commission's own order confirms that substantial federal-law issues are raised by this case. The Commission quoted at length from a federal district court opinion, which in turn analyzed federal statutes and FCC materials. The Commission made no reference to state contract-law principles. Indeed, it made no reference to state contract law at all. Thus, the Commission's argument now that this case is simply a matter of state contract law does not ring true.

Subsection 252(e)(6)'s reference to §§ 251 and 252 does not counsel against federal court review for compliance with federal law. In its grant of authority to state commissions, § 252 does not confine state commissions to analysis of a few narrow technical points, but allows consideration of such open-ended factors as "the public interest, convenience, and necessity." 47 U.S.C. § 252(e)(2)(A)(ii). Compliance with federal law is surely among these considerations. It therefore follows that § 252(e)(6)'s grant of jurisdiction to the federal courts to review for compliance with §§ 251 and 252 includes the power to ensure that the state commission's enforcement actions are consistent with federal law.

Our conclusion that federal courts have jurisdiction to review federal-law issues reached in these state-commission enforcement proceedings is consistent with the scheme of cooperative federalism embodied in the Telecommunications Act. In passing

the Act, Congress was faced with reconciling such competing interests as federal uniformity and state autonomy, and it struck a compromise. With regard to purely state law issues, the state commissions may have the final say. See Puerto Rico Tel. Co. v. Telecommunications Regulatory Bd., 189 F.3d 1, 13-15 (1st Cir. 1999). As the Supreme Court put it, however, "there is no doubt . . . that if the federal courts believe a state commission is not regulating in accordance with federal policy they may bring it to heel." AT&T Corp., 525 U.S. at 379 n.6. Thus, we read § 252(e)(6), as a part of the Telecommunications Act, to include the grant of jurisdiction to review state commission enforcement proceedings for compliance with federal law.

For the reasons above, we cannot agree with the District Court that determinations of state commissions interpreting and enforcing interconnection agreements necessarily raise only questions of state contract law. Southwestern Bell has alleged that the Commission's determination that internet-connecting calls are "local traffic" violated federal law, and it is entitled to the District Court's consideration of that claim on the merits.

## II.

We do not reach the merits of Southwestern Bell's federal-law claim. We also decline to reach the question of whether the Eleventh Amendment gives the Arkansas Public Service Commission, or the Commissioners, immunity from this suit. The District Court should have the opportunity to decide those questions in the first instance. We simply hold that the District Court has jurisdiction to hear Southwestern Bell's federal-law claim.

For the reasons stated, we reverse.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

The court quite rightly begins its consideration of this case with the observation that federal courts are courts of limited jurisdiction and may adjudicate only such cases as Congress, in the exercise of its constitutional authority, assigns to them. I respectfully dissent, however, from the court's conclusion that there is federal jurisdiction in the present circumstances.

The court rests its view that a federal court may entertain this case on 47 U.S.C. § 252(e)(6), which confers jurisdiction "[i]n any case in which a State commission makes a determination under this section." The "determination" referred to here must surely be one made with respect to whether a negotiated agreement ought to be approved. Since that issue, as everyone recognizes, is not involved in this case, federal courts simply have no jurisdiction in the matter.

The court finds federal jurisdiction because it believes that state public service commissions necessarily have jurisdiction to enforce the agreements that it approves. I doubt that. There is nothing in the statute that so provides, and, indeed, the Arkansas Public Service Commission believes, and for good reason, that federal law does not give it such jurisdiction. Even if it did, a state public service commission's order involving the enforcement of an approved agreement would still not be reviewable by a federal court, because it would not be the kind of "determination" to which 47 U.S.C. § 252(e)(6) applies. That section quite plainly refers only to determinations of whether to approve a negotiated agreement. There is, I recognize, language to the contrary in *Iowa Utilities Board v. Federal Communications Commission*, 120 F.3d 753, 804 n.24 (8th Cir. 1997), *aff'd in part*, *rev'd in part*, *AT&T Corp. v. Iowa Utilities Board*, 525 U.S. 366 (1999), but I believe that that language is only *dictum*.

Nor, as I see it, is this a case that arises "under the ... laws ... of the United States," so as to be actionable in federal courts under our general federal-question jurisdiction. *See* 28 U.S.C. § 1331. What federal law does here is give the parties the authority to contract. That does not mean that federal law gives the right of action in case of a breach; presumably, state law does that. This case therefore does not arise under federal law. Even if it could be said that federal claims in the circumstances of this case would not be "wholly insubstantial and frivolous," *Bell v. Hood*, 327 U.S. 678, 682-83 (1946), so that, strictly speaking, there is federal jurisdiction to hear the matter, the action would still have to be dismissed for failure to state a claim on which relief could be granted. *See*, *e.g.*, *Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union*, 457 U.S. 15, 21 n.6 (1982). What law supplies the rule of decision in deciding how to interpret the relevant agreement would be a question for the state courts or agencies in which this action belongs to decide. It might well be state law or it might be federal common law, but in any case the principles would likely be the same, or virtually identical, because of the general uniformity of the contract principles applied throughout the country in state and federal courts alike.

The court points out that federal law may be dispositive of the claim before us, but the mere fact that a federal-law question has to be decided in the course of an adjudication is hardly enough to make a case a federal one under 28 U.S.C. § 1331. Federal questions arise all the time in state court proceedings, but, ordinarily, such questions are determined in the state courts with the ultimate possibility of review in the Supreme Court. That is what the Supremacy Clause, *see* U.S. Constitution, art. VI, cl. 2, is all about. If every person who disagrees with a state agency's determination of federal law had a claim in federal court, we would be dealing with little else.

In short, I believe that the district court got it right, and I would affirm on the basis of its well-reasoned opinion.

I therefore respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.